UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
ANGULO CAPITAL CORP.                          :
and GERARD ANGULO,                            :         **JURY DEMAND**
                                              :
                         Plaintiff,           :
                                              :         Civil Action
      - against -                             :         Case No.:      04 Civ.          (     )
                                              :
SKADDEN, ARPS, SLATE,                         :
MEAGHER & FLOM, LLP,                          :
                                              :
                         Defendant.           :
-------------------------------------------------x     <u>COMPLAINT</u>



         Plaintiffs Angulo Capital Corp. and Gerard Angulo, by their attorneys, Eric W. Berry Law

Office pc, for their complaint allege as follows:

**A. Parties**

         1.    Plaintiff Angulo Capital Corp. is a corporation organized under the laws of the State of

Florida and has its principal place of business in San Juan Puerto Rico.

         2.    Plaintiff Gerard Angulo is citizen and resident of the Commonwealth of Puerto Rico

**B. Jurisdiction and Venue**

         3.    Defendant Skadden, Arps, Slate Meagher & Flom, LLP is a limited liability partnership

organized under the laws of the State of Delaware.  The firm's principal offices are located in New

York, New York. It has no offices or partners in Puerto Rico or Florida.

         4.    This Court as in *personam jurisdiction* over Skadden Arps because Skadden Arps has

a principal place of business in New York, and because the claims in this case arise from events and

transactions occurring in New York.

         5.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332

based on the complete diversity of citizenship of adverse parties. The matter in controversy exceeds

the sum or value of $75,000, exclusive of interest and costs.

**C. The Nature of this Action**

6. Gerard Angulo is the sole shareholder of Angulo Capital Corp.

7. In this action, plaintiffs assert claims of legal malpractice and "fraud on the court" against Skadden Arps

8. The legal malpractice claims in this case are based on Skadden Arps' failure to take any steps to dissolve a partnership known as First Capital Partners, in which Anglo Capital Corp. was one of two partners.

9. The fraud on the court claim is based on Skadden Arps' falsely asserting in a legal fees action -- *Skadden, Arps, Slate, Meagher & Flom, LLP v. Angulo*, Civil Case No. 02 Civ. 9322 (RMB) – which it had commenced in this Court (sometimes, "the Federal Fees Action") that, because it was not entitled to invoke federal diversity jurisdiction, it was required to dismiss that action and re-file its claims in the New York State Courts. In particular, Skadden Arps asserted in the Federal Fees action that the residency of one or more unidentified partners in the firm precluded Skadden Arps from either asserting that it was a citizen of a state or that it was a citizen of a foreign country within the meaning of 28 U.S.C. §1332. In reality, Skadden Arps has never been disabled from invoking the Court's diversity jurisdiction – as confirmed by the fact that at all relevant times it was prosecuting a separate fees action in the U.S. District Court in Delaware and, in that action, relied solely upon diversity of citizenship as a basis of federal subject matter jurisdiction. In truth, the actual reason Skadden Arps sought to dismiss the Federal Fees Action was to avoid the effect of a discovery order by Judge Berman in the Federal Fees Action which would have revealed that $170,000 of the fees it was seeking to recover from Angulo were based upon fictitious time charges.

2

**D. Allegations Common to All Claims**

    **(i) Background: the *Nemazee v. Angulo* Case**

    10.  During the years 1996 through 1999, Skadden Arps acted as plaintiffs' attorneys in a case entitled *Nemazee Capital Corp. v. Angulo Capital Corp. and Gerard Angulo*, Civil Case No. 96 Civ. 1023 (RO) (the "*Nemazee v. Angulo* case"). *Nemazee v. Angulo* was a dispute between Nemazee Capital Corp. and Angulo Capital Corp., which were partners in a New York partnership known as *First Capital Partners*. Skadden Arps billed for, and Angulo paid, a total $1,020,979 for the services Skadden Arps performed in the District Court.

    11.  The Final Judgment in the *Nemazee v. Angulo* case, which was affirmed by the Second Circuit in 1998, ordered the dissolution of First Capital Partners and awarded Angulo the right to purchase First Capital Partners' sole viable asset – which was a 90 percent interest in a corporation known as Santa Rita Industries, Inc. – for $900,000.

    12.  The Final Judgment in the *Nemazee v. Angulo* case also provided that: "the Partnership entities [*i.e.*, First Capital Advisers, Westloop Investment, Inc. and First Capital Investors, Inc., all of which were beneficially owned by First Capital Partners]" were to be dissolved "promptly." (Hereinafter, First Capital Advisers, Westloop Investment, Inc. and First Capital Investors, Inc. will sometimes be referred to as "the Partnership Entities.")

    **(ii) Skadden Arps' Fictitious Time Charges for**
         **The Period  Following the Appeal**

    13.  Skadden Arps represented Angulo and Angulo Capital through the argument of the appeal of the Final Judgment in the *Nemazee v. Angulo* case.   The appeal was argued on May 4, 1998, and affirmed in July 1998.   Following the affirmance by the Second Circuit, Angulo did not

authorize or request any services from Skadden Arps and Skadden did not perform any services, render any advise to Angulo, take any actions on Angulo's behalf or generate any work product whatsoever.

14. Nevertheless, Skadden Arps sent bills, which were later supplemented by time sheets of one Skadden Arps attorney, Jeffrey Glekel, Esq, which purported to reflect a total of $170,000 in time charges that were incurred after the appeal and concerned the dissolution of First Capital Partners. The entirety of Mr. Glekel's time sheets – the ostensible back up for these bills – consisted of the repetition of the following entries: "Attention to Partnership Dissolution Issues"; "Analysis of Partnership Dissolution Issues"; "Review of Partnership Dissolution Requirements"; "Attention to Miscellaneous Partnership Issues"; and "Attention to Issues: re Termination of the Partnership." These time entries did not provide *any* further specification of what Mr. Glekel might have been doing.

15. During the time corresponding to these time entries -- July 1998 through September 1999 -- Angulo never received any phone calls, memoranda, research, letters or legal documents concerning from Skadden Arps concerning either the dissolution of First Capital Partners or the dissolution of the Partnership Entities (*i.e.*, First Capital Investors, First Capital Advisors and Westloop). As detailed below, Angulo can establish that, in truth, Skadden Arps did no work *whatsoever* in connection with the dissolution of either First Capital Partners or the partnership entities.

### (iii) Skadden Arps' Fraud on the Court in the Federal Fees Action

16. Subsequently, Skadden sued Angulo for unpaid fees in this Court in a case entitled

4

settlement discussions were unsuccessful, Judge Berman conducted a telephone conference on February 20, 2003. As acknowledged in the February 26, 2003 letter of Skadden Arps' attorney, Stuart Krause, Esq., to Judge Berman, at the February 20, 2003 conference, Judge Berman "ordered that discovery take place over the next 30 days."

20. Skadden Arps had not done any work or generated any work product, conducted any research, or taken any actions on Angulo's behalf during the period following concerning the dissolution of First Capital Partners, and the entire $170,000 in fees it sought for the period following the affirmance of the appeal in the *Nemazee Capital v. Angulo Capital* case was based on fictitious time charges. Accordingly, the discovery Judge Berman had ordered would reveal that Skadden Arps' bills for the period following the affirmance were fraudulent and could not support either a claim for an "account stated" or for a breach of the fee agreement against Angulo.

21. Skadden Arps therefore engaged in a ploy aimed at misleading the Court and obtaining a "without prejudice" dismissal of the Federal Fees Action -- so that it could avoid the discovery order entered by Judge Berman by refiling its fees claims in the New York State Supreme Court where — under the CPLR §3214, it could obtain an immediate stay of discovery by filing a summary judgment motion.

22. In particular, Skadden Arps falsely represented in Mr. Krause's February 26, 2003 letter to Judge Berman that certain unidentified partners in the firm were United States citizens who had permanently relocated abroad and, therefore, could not be considered domiciled in the state of the United States in which they had previously resided. Therefore, according to Mr. Krause's letter, such partners were neither citizens of a state nor citizens of a foreign country and, as Mr. Krause's letter put it, therefore had "no access to the federal courts under diversity jurisdiction." Since, for

6

the purpose of the diversity statute, a partnership has the citizenship of each of its partners, if Mr. Krause's conclusion that Skadden Arps had partners who "were neither citizens of a state, nor citizens of a foreign country" were correct, it would then be precluded from relying on diversity of citizenship in order to establish federal subject matter jurisdiction.

23. Based on these representations, Skadden Arps' sought and obtained an order dismissing the Federal Fees Action without prejudice. Shortly thereafter, Skadden Arps re-filed its suit against Angulo in the New York State Supreme Court for New York County, entitled *Skadden, Arps, Slate, Meagher & Flom, LLP v. Angulo*, New York County Index No. 600814/03 ("the State Court Fees Action.")

24. In the State Court Fees Action, immediately after Angulo answered, Skadden Arps moved for summary judgment, thereby automatically staying discovery pursuant to CPLR §3214. In this fashion, Skadden Arps avoided having to provide the discovery which Judge Berman had ordered, and which would have confirmed that Skadden Arps did no work on the dissolution of First Capital Partners during the period following the appeal in the *Nemazee v. Angulo* case, and that the invoices for this period were based on fictitious time entries.

25. In actuality, Skadden Arps does not have any partners whose assignment overseas prevented it from invoking the federal diversity jurisdiction statute, and Skadden Arps had falsely represented that the residence of one or more of its partners prevented it from suing under diversity jurisdiction. The actual reason for the dismissal of the Federal Fees Action was to avoid the discovery ordered by Judge Berman by dismissing the Federal Fees Action in favor of a suit in the New York State Supreme Court. This gambit would enable Skadden to obtain an automatic stay of discovery, under CPLR §3214, by refiling the suit in the New York State courts and immediately

7

moving for summary judgment.

26. The fact that Skadden Arps' representation that it was not entitled to invoke federal diversity jurisdiction was false is established by another fees case entitled *Skadden, Arps, Slate, Meagher & Flom, LLC v. Learning 2000, Inc.*, 02 Civ. 1582 (D. Del. 2002). Skadden Arps filed the *Learning 2000* action in the U.S. District Court in Delaware on October 25, 2002, just 26 days prior to its filing the Federal Fees Action against Angulo. While, in the Federal Fees Action, Skadden Arps reported to Judge Berman on February 26, 2003 that it was not to invoke federal diversity jurisdiction, by contrast, in the *Learning 2000* case, it did not reveal any such conclusion to the Delaware District Court. Instead, notwithstanding its letter to Judge Berman, Skadden Arps continued to prosecute the *Learning 2000* case, eventually obtaining a money judgment on January 5, 2004, even though, in that case, federal subject matter jurisdiction was also based solely on diversity of citizenship.

27. In actuality, Skadden Arps is not precluded from invoking the diversity jurisdiction of the federal courts, because had it been, it would have undoubtedly voluntarily dismissed the *Learning 2000* case, and refiled in an appropriate state court, rather than prosecuting it through judgment. Specifically, as Skadden Arps acknowledged in an affirmation of its attorney, Mr. Krause, "any proceedings in a federal action where subject matter jurisdiction is lacking are null and void, and such nullity can be raised through and including appeal to the United States Supreme Court." If Skadden Arps believed that there was even the slightest chance that the foreign residence of any of its partners actually destroyed diversity jurisdiction, it would not have prosecuted the *Learning 2000* case to judgment knowing that federal subject matter jurisdiction could be successfully challenged at any time. If Skadden Arps had actually prosecuted the *Learning 2000* case in federal

8

court despite an awareness that federal subject matter jurisdiction did not exist, it would undoubtedly be required to reimburse the fees and disbursements the *Learning 2000* defendants had incurred defending an action in the wrong court.

### (iv) The State Court Fees Action

28.    After dismissing the Federal Fees Action, Skadden Arps refiled its fees claims against in the New York State Supreme Court in Manhattan, where it was assigned to the Hon. Shirley Werner Kornreich ("the State Court Fees Action").    In the State Court Fees Action, Skadden Arps immediately moved for summary judgment, thereby obtaining an automatic stay of discovery, and avoiding the risk that the State Court might order discovery.    Angulo opposed Skadden Arps' summary judgment motion by contending that, following the argument of the appeal, Skadden Arps did no work on the case and, specifically, did not do any work on the dissolution of First Capital Partners, and that the post-appeal time charges were purely fictitious. Angulo also opposed the motion on the grounds that should have an opportunity to conduct discovery in support of his defense that Skadden Arps' invoices were based upon fictitious and inflated time charges.

29.    In the pleading and memoranda of law Skadden Arps submitted in the State Court Fees Action, Skadden Arps disputed Angulo's contention that it had done no work on the dissolution of First Capital Partners, and argued that Angulo had authorized it to work on the dissolution of First Capital Partners after the appeal and that it had performed the requested services.

30.    In the State Court Fees action, Justice Kornreich granted Skadden Arps' summary judgment motion.  Justice Kornreich also rejected Angulo's contention that, prior to Skadden Arps obtaining summary judgment, he should be permitted to conduct discovery in support of his defense that Skadden Arps performed no services regarding he dissolution of First Capital Partners following

the appeal in the *Nemazee v. Angulo* case.

31.  In the State Court Fees Action, Skadden Arps did not submit affidavits from any of its attorneys to dispute Angulo's contention that it had not performed any services relating the dissolution of First Capital Partners during the period following the appeal in the *Nemazee v. Angulo* case. Skadden Arps thereby impliedly admitted the validity of Angulo's allegations that it did no work during that period.

32.  Furthermore, Skadden Arps did not include in its summary judgment motion any memoranda, correspondence, legal documents or  work product which was generated or created following the appeal in the *Nemazee v. Angulo* case, thereby confirming that no such work product exists.

**(v) Following the affirmance in the *Nemazee v. Angulo* Case,
Skadden Arps Did No Work at All**

33.  At minimum, the dissolution of First Capital Partners, as contemplated by the terms of the Final Judgment in the *Nemazee v. Angulo* case, involved the following tasks:

(i) Dissolving the entities which First Capital Partners beneficially owned  – namely, First Capital Advisors, First Capital Investors and Westloop (*i.e.*, the "Partnership Entities" as defined in the Final Judgment in the *Nemazee v. Angulo* case.)

(ii) Documenting the transfer of First Capital Partners' 90 percent interest in Santa Rita Industries, Inc. to Angulo.

- and -

(iii)  Filing a Certificate of  Discontinuance of Doing Business as Partners in New York County (where First Capital Partners' "Certificate of Doing Business as Partners" had been filed0.

10

34.   Skadden Arps never took any steps to formally dissolve First Capital Advisors, First Capital Investors or Westloop.   First Capital Investors is listed as an inactive but existing and undissolved corporation by the New York Department of State.   First Capital Advisers is listed as a "void" but undissolved entity by the Delaware Secretary of State and as an inactive but existing and undissolved corporation by the New York Department of State.   The Texas Secretary of State confirms that Westloop was never dissolved and, instead, had its charter revoked for the non-payment of franchise taxes.   There are no indications in any public records that Skadden Arps took any steps whatsoever to legally and formally dissolve these Partnership Entities, despite the bills and time sheets in which Skadden Arps represented that it was doing so.

35.   Angulo did not receive any phone calls, drafts, memoranda, documents or work product, or other information or material, from Skadden Arps during the period following the appeal in the *Nemazee v. Angulo* case.   In fact, Angulo has never received  from Skadden Arps any information or material concerning the legal dissolution of  the Partnership Entities, the filing of any Certificate of Discontinuance of First Capital Partners or the disposition of Santa Rita Industries, Inc. from Skadden Arps.

36.   Skadden Arps did not take any steps to document the transfer of  First Capital Partners 90 percent beneficial interest in Santa Rita Industries, Inc. to Angulo.   Although, without Skadden Arps' assistance, Angulo assumed physical possession of the certificates for 90 percent of the stock of Santa Rita Industries, no assignments, assumptions or other documents were ever prepared in connection with the transfer of this interest.

37.   No Certificate of  Discontinuance of Doing Business as Partners was ever filed for First Capital Partners in New York County, as Angulo learned through counsel in June 2003.  In fact, as

Angulo has recently learned, the New York County Clerk's office still regards First Capital Partners as an "active entity."    In other words, despite the $170,000 in time Skadden Arps' claims to have spent on efforts to dissolve First Capital Partners during the period following the appeal, nothing was ever done to discontinue the partnership as a legal entity in New York.

## First Claim:

## Legal Malpractice-Breach of Contract

38.    Paragraphs 1 - 37 are repeated and realleged as if set forth fully herein.

39.    As a result of the judgment in is favor in the State Court Fees Action, Skadden Arps is judicially estopped from denying that, following the appeal in the *Nemazee v. Angulo* case, it agreed to perform services concerning the dissolution of First Capital Partners.    Accordingly, plaintiffs allege that:

(i) Skadden Arps agreed that it would act as plaintiffs' attorneys in connection with the dissolution of First Capital Partners following the appeal in the *Nemazee v. Angulo* case.

(ii) Skadden Arps is judicially estopped from denying that plaintiffs detrimentally relied on its agreement to act as plaintiffs' attorneys in connection with the dissolution of First Capital Partners following the appeal in the *Nemazee v. Angulo* case.

(iii) After the appeal in the *Nemazee v. Angulo* case, Skadden Arps' breached its agreement to perform services concerning dissolution of First Capital Partners in the following fashion:

(a) Skadden Arps did not take any action to judicially dissolve the entities which were beneficially owned by First Capital Partners, namely:    First Capital Investors, First Capital Advisors and Westloop, as contemplated by the Final Judgment in the *Nemazee v. Angulo* case.

(b) Skadden Arps did not perform any services in connection with Angulo's purchase of a 90 percent interest in Santa Rita Industries, Inc.

12

(c) Skadden Arps did not take any action to file a Certificate of Discontinuance of Doing Business as Partners in New York County for First Capital Partners.

- and -

(d) Skadden Arps submitted bills and purported time entries to plaintiffs which were false and misleading because they indicated that, following the appeal in the *Nemazee v. Angulo* case, Skadden Arps was taking steps to dissolve First Capital Partners and the Partnership Entities when, in fact, it was not doing so.

40. Skadden Arps never undertook any actions aimed at dissolving First Capital Partners, as contemplated by the Final Judgment in the *Nemazee v. Angulo* case.

41. As a result of Skadden Arps' failure to take any steps to accomplish the dissolution of First Capital Partners, and its malpractice and breach of contract, plaintiffs have suffered injuries to their business and property, including the entry of a judgment against Angulo for an amount in excess of any legal fees actually due and owing to Skadden Arps.

42. For these reasons, Skadden Arps is not entitled to obtain any fees or compensation based upon bills for services rendered or purportedly rendered following the appeal in the *Nemazee v. Angulo* case in connection with the dissolution of First Capital Partners.

**Second Claim:**

**Legal Malpractice-Breach of Fiduciary Duty**

43. Paragraphs 1 - 42 are repeated and realleged as if set forth fully herein.

44. As a result of the judgment in is favor in the State Court Fees Action, Skadden Arps is judicially estopped from denying that, following the appeal in the *Nemazee v. Angulo* case, it agreed to perform services concerning the dissolution of First Capital Partners. Accordingly,

13

plaintiffs allege that:

(i) As plaintiffs' attorneys, Skadden Arps owed plaintiffs the fiduciary duty of care and loyalty.

(ii) As plaintiffs' attorneys, Skadden Arps owed plaintiffs the fiduciary duty of pursuing plaintiffs' interests diligently and zealously.

(iii) As plaintiffs' attorneys, Skadden Arps owed plaintiffs the fiduciary duty to disclose all information relevant his interests.

(iv) Skadden Arps is estopped from denying that plaintiffs reposed their his confidence in it and reasonably relied on the expectation that Skadden Arps would adhere to its fiduciary responsibilities in connection with dissolution of First Capital Partners during the period following the *Nemazee v. Angulo* appeal.

- and -

(v) After the *Nemazee v. Angulo* appeal, Skadden Arps' breached its fiduciary duties to plaintiffs in the following fashion:

(a) Skadden Arps did not take any action to judicially dissolve the entities which were beneficially owned by First Capital Partners, namely:    First Capital Investors, First Capital Advisors and Westloop, as contemplated by the Final Judgment in the *Nemazee v. Angulo* case.

(b) Skadden Arps did not perform any services in connection with Angulo's purchase of a 90 percent interest in Santa Rita Industries, Inc.

(c) Skadden Arps did not take any action to file a Certificate of Discontinuance of Doing Business as Partners in New York County for First Capital Partners.

- and -

(d) Skadden Arps submitted bills and purported time entries to plaintiffs

14

which were false and misleading because they indicated that, following the appeal in the *Nemazee v. Angulo* case, Skadden Arps was taking steps to dissolve First Capital Partners and the Partnership Entities when, in fact, it was not doing so.

45. Skadden Arps never undertook any actions aimed at dissolving First Capital Partners, as contemplated by the Final Judgment in the *Nemazee v. Angulo* case.

46. As a result of Skadden Arps' failure to take any steps to accomplish the dissolution of First Capital Partners, and its malpractice and breach of fiduciary duties, plaintiffs have suffered injuries to their business and property, including the entry of a judgment for an amount in excess of any legal fees actually due and owing to Skadden Arps.

47. For these reasons, Skadden Arps is not entitled to obtain any fees or compensation based upon bills for services rendered or purportedly rendered following the appeal in the *Nemazee v. Angulo* case in connection with the dissolution of First Capital Partners.

48. Skadden Arps' conduct was intentional, willful, and in reckless disregard of the fiduciary obligations to plaintiffs.

### Third Claim:

### Fraud on the Court

49. Paragraphs 1 - 48 are repeated and realleged as if set forth fully herein.

50. The elements of a fraud upon the court are (i) conduct on the part of an officer of the court; (ii) that is directed to the "judicial machinery" itself; (iii) that is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; (iv) that is a positive averment or a concealment when one is under a duty to disclose; and (v) that deceives the court.

51. Skadden Arps is an officer of the court and each of its partners are officers of the Court.

52. Skadden Arps' representation that it was required to dismiss the case because it was

neither a citizen of any state nor the citizen of a foreign country and thus not entitled to invoke diversity jurisdiction, was directed at the "judicial machinery": *i.e.*, the Court in the Federal Fees Action.

53. Skadden Arps representation that it was neither a citizen of any state nor the citizen of a foreign country within the meaning of the diversity jurisdiction statute (28 U.S.C. §1332) was intentionally false or in reckless regard to the truth, as confirmed by the fact that, at the time it made the representation, it was continuing to invoke federal diversity jurisdiction in the *Learning 2000* case.

54. Skadden Arps was under a duty to truthfully and accurate identify its citizenship for the purpose of determining its entitlement to invoke federal diversity jurisdiction.

55. The District Court in the Federal Fees Action was deceived by Skadden Arps' assertion that its citizenship destroyed diversity jurisdiction.

56. By prosecuting the *Learning 2000* case to judgment, Skadden Arps became judicially estopped from denying that it is entitled to invoke the diversity jurisdiction of the federal courts during the period between October 26, 2002, when it commenced the *Learning 2000* case, and January 5, 2004, when it obtained a final judgment in the *Learning 2000* case.

57. If Skadden Arps had not perpetrated the fraud on the court in the Federal Fees Action, under Judge Berman's discovery order of February 20, 2003, plaintiffs would have obtained evidence revealing that the invoices underlying Skadden Arps fees' claims were false and that the time sheets corresponding to the period after the appeal in the *Nemazee v. Angulo* case were fictitious.

58. Plaintiffs have been injured in their business and property by Skadden Arps fraud on the

16

court.

59.  Skadden Arps' fraud on the Court was intentional, willful, and in reckless disregard of the obligations imposed on its attorneys as officers of the Court.

Wherefore, plaintiffs demand judgement as follows:

1.  On the First through Third Claims, compensatory damages in an amount to be determined at trial, but in any event no less than $200,000.

2.  On the Second and Third Claims, punitive damages in an amount to be determined at trial, but in any event no less than $1 million.

3.  An award of interest, costs and attorneys fees.

Dated:  New York, New York          Eric W. Berry Law Office pc
        April 22, 2004
                                    By: _____
                                        Eric W. Berry [EB8598]
                                    *Attorneys for plaintiffs Gerard Angulo*
                                        *and Angulo Capital Corp*
                                    509 Madison Avenue, Suite 2004
                                    New York, New York   10022
                                    (212) 355-0777

17