Stuart A. Krause (SK-3847)

ZEICHNER ELLMAN & KRAUSE LLP

575 Lexington Avenue
New York, New York 10022
(212) 223-0400

Attorneys for Defendant
  Skadden, Arps, Slate, Meagher & Flom LLP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANGULO CAPITAL CORP.
and GERARD ANGULO,

                              Plaintiffs,

        - against -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP,

                              Defendant.

Civil Action No.: 04 CV 3114 (KMW)

---

# MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

**ZEICHNER ELLMAN & KRAUSE LLP**
**575 Lexington Avenue**
**New York, New York 10022**
**(212) 223-0400**
**Fax: (212) 753-0396**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS ........................................................................................................2

      A.    Skadden's Representation of Angulo .....................................................2

      B.    The Prior Federal Action ......................................................................3

      C.    The Parties Consent to Dismissal ..........................................................5

      D.    The New York State Action ...................................................................6

      E.    The Instant Action .................................................................................8

ARGUMENT.............................................................................................................................8

      A.    This Court has No Subject Matter Jurisdiction.......................................8

      B.    Plaintiffs' Fraud Claims Are Barred by Res Judicata............................10

      C.    Plaintiffs' Malpractice Claims Are Barred By the Statute of Limitations ...........................................................................................14

      D.    Plaintiffs Fail to State a Claim for Fraud on the Court .........................16

CONCLUSION.........................................................................................................................18

i

## TABLE OF AUTHORITIES

### CASES

Adamson v. Bachner, No. 01 Civ. 10213, 2002 WL 31453096 (S.D.N.Y. Oct. 31, 2002) ...........................................................................................................16

Allen v. McCurry, 449 U.S. 90 (1980) .................................................................10

Alpert's Newspaper Delivery, Inc. v. The New York Times Co., 876 F.2d 266 (2d Cir. 1989).......................................................................................................14

Cresswell v. Sullivan & Cromwell, 922 F.2d 60 (2d Cir. 1990) ....................................8

Daniels v. Lebit, 299 A.D.2d 310, 749 N.Y.S.2d 149 (2d Dep't 2002) ......................15

Exchange National Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126 (2d Cir. 1976).........................................................................................................4

Glamm v. Allen, 57 N.Y.2d 87, 453 N.Y.S.2d 674 (1982) .........................................16

Gleason v. Jandrucko, 860 F.2d 556 (2d Cir. 1988)...........................................16, 17

Grupo DataFlux v. Atlas Global, L.P., _ U.S. _, 124 S. Ct. 1920 (2004) .......................8

Herrick Co. v. SCS Communications, Inc., 251 F.3d 315 (2d Cir. 2001) .................1, 9

Herrick Co. v. Vetta Sports, Inc., No. 94 Civ. 0905, 2002 WL 362760 (S.D.N.Y. Mar. 5, 2002), aff'd in part, rev'd in part on other grounds, 360 F.3d 329 (2d Cir. 2004)........................................................................................................9

Kahn v. Hart, 270 A.D.2d 231, 704 N.Y.S.2d 126 (2d Dep't 2000) ...........................16

Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941)....................13

Land v. Dollar, 330 U.S. 731 (1947) ........................................................................4

Linardos v. Fortuna, 157 F.3d 945 (2d Cir. 1998)......................................................8

Machleder v. Diaz, 801 F.2d 46 (2d Cir. 1986)..........................................................13

Meadowcroft Associates, Inc. v. Davis Polk & Wardwell, No. 01 Civ. 8377, 2001 WL 1112693 (S.D.N.Y. Sept. 21, 2001) .....................................................9

Monahan v. New York City Department of Corrections, 214 F.3d 275 (2d Cir. 2000) .................................................................................................10, 14

Palazzo ex rel. Delmage v. Corio, 232 F.3d 38 (2d Cir. 2000) .........................................9

Serzysko v. Chase Manhattan Bank, 461 F.2d 699 (2d Cir. 1972) ..............................17

Skadden, Arps, Slate, Meagher & Flom LLP v. Gerard Angulo, Civ. No. 02-9322 (RMB) .......................................................................................................1, 3

Svenska Finans Int'l, BV v. Scolaro, Shulman, Cohen, Lawler & Burnstein, P.C., 37 F. Supp. 2d 178 (N.D.N.Y. 1999) .......................................................15

Waldman v. Kiryas Joel, 207 F. 3rd 105 (2nd Cir.2000)…………………………………………13

Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan, 263 F.3rd 196 (2nd Cir. 2001)…………13

## STATUTES

Fed. R. Civ. P. 12(b)(1) ....................................................................................................1

Fed. R. Civ. P. 12(b)(6)………….. ....................................................................................1

Fed. R. Civ. P. 60(b) ..................................................................................................16, 17

Fed. R. Civ. P. 60(b)(3) ...................................................................................................16

N.Y. C.P.L.R. § 214(6) (McKinney 2003) .................................................................14, 15

28 U.S.C. § 1332(a) .........................................................................................................1, 8

Defendant Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") respectfully submits this memorandum of law in support of its motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

After a New York state court entered a judgment against him for $1.2 million for unpaid legal fees due to Skadden, Gerard Angulo ("Angulo") now seeks to replead his failed defenses and counter-claims and other time-barred claims in federal court despite a clear absence in this Court of subject matter jurisdiction over the parties.

As set forth in the complaint herein, the parties were previously before this Court in Skadden, Arps v. Angulo, Case No. 02 CV 9322 (RMB) (the "Prior Federal Action"), in which Skadden sought payment from Angulo for outstanding legal fees. Jurisdiction in that action was initially premised upon diversity pursuant to 28 U.S.C. 1332(a)(1). After filing its complaint, Skadden realized that there was a jurisdictional deficiency, and wrote to advise the Court that, based on the controlling decision in Herrick Co. v. SCS Communications, Inc., 251 F.3d 315 (2d Cir. 2001), diversity jurisdiction was lacking. Accordingly, on March 10, 2003, this Court entered a Stipulation and Order on consent dismissing the Prior Federal Action without prejudice.

Skadden promptly re-filed its action in New York State Court (the "State Court Action") and, on December 4, 2003, the New York State Supreme Court (Hon.

Shirley Werner Kornreich, J.S.C.) (the "State Court") entered summary judgment in Skadden's favor in the amount of $1,238,890.31. In a written decision, the State Court specifically considered, and rejected, Angulo's claim (virtually identical to that made in the instant action) that Skadden engaged in fraudulent billing practices, including the alleged failure to perform work for which it billed. Angulo's appeal of the decision remains pending.

In this action, Angulo, and Angulo Capital Corp. ("ACC"), his wholly owned company, seek to re-litigate the identical matters already adjudicated in the State Court Action along with a baseless claim for fraud upon the court. Plaintiffs' present action, over which this court lacks subject matter jurisdiction and which contains claims that are barred by *res judicata*, time-barred or which fail to state a claim upon which relief may be granted, should be dismissed.

## STATEMENT OF FACTS [1]

### A.    Skadden's Representation of Angulo

Beginning in February 1996 through late 1999, Skadden represented Plaintiffs Angulo and ACC in connection with a lawsuit brought against them in the Southern District of New York, on appeal of a judgment rendered in their favor to the Second Circuit (the "Litigation"), and in the implementation of that judgment -- including the distribution of the assets of the partnership that was the subject of the

---

[1]    Many of the facts contained herein are taken from the decision, order and judgment in the State Court Action ("Order and Judgment") which is attached to the Krause Attorney Statement at exhibit A.)

Litigation. (Order and Judgment pp. 1-3)   During the course of the representation, Skadden sent Angulo 29 itemized statements of his legal fees. (Order and Judgment pp. 3-4) Angulo made some payments on his account, totaling approximately $1 million, but after the verdict in his favor was upheld by the Second Circuit, his payments fell off sharply. (Order and Judgment p. 4)

Angulo subsequently wrote numerous post-dated checks to Skadden, most of which were subsequently dishonored, and also wrote a number of letters apologizing for stopping the checks and for his failure to pay, and promising to pay the outstanding balance of his account in the future. (Order and Judgment pp. 4-5)  By the middle of 2001, Angulo had stopped returning Skadden's phone calls and did not respond to the follow up letters sent to him by Skadden requesting payment on his outstanding account. (Order and Judgment p. 5)

**B.**      **The Prior Federal Action**

On November 21, 2002 Skadden filed suit against Angulo in this Court in an action captioned Skadden, Arps, Slate, Meagher & Flom LLP v. Gerard Angulo, Civ. No. 02-9322 (RMB).   In February of 2003, Skadden recognized that there was a jurisdictional defect in the case, in which jurisdiction was based on diversity of citizenship between the parties.  The lack of diversity arises from the fact that Skadden is a Delaware limited liability partnership with offices in ten U.S. cities and twelve

3

foreign cities, and has a number of partners who are U.S. citizens and are domiciled abroad.  (Affidavit of Rona G. Shamoon ("Shamoon Aff.") ¶2.)[2]

For example, Christopher L. Baker, who became a Skadden partner in 1993, is a U.S. citizen domiciled in Paris.  (Affidavit of Christopher L. Baker ("Baker Aff.")  ¶2.)  Mr. Baker, who was born in Lake Forest, Illinois on February 14, 1958, has lived and worked in Paris continually from 1986 through the present.  (Baker Aff. ¶2.) Since 1998 he has owned a residence on Avenue Georges Mandel in Paris where he currently lives with his wife and minor children.  (Baker Aff. ¶ 3.)  Mr. Baker owns no real property in the United States.  (Baker Aff. ¶3.)  During at least the past ten years Mr. Baker has not voted in any State or local election in the United States nor was he registered to do so.  (Baker Aff. ¶3.)  Since becoming a Skadden partner in 1988, Mr. Baker has not filed resident tax returns in any U.S. state; during those years he filed non-resident tax returns in the states in which Skadden has offices.  (Baker Aff. ¶2.) Since 1994, Mr. Baker has held only a French driver's license.   (Baker Aff. ¶3.) Mr. Baker intends to remain in France indefinitely.  (Baker Aff. ¶ 4.)

Bruce M. Buck, who has been a partner working in Skadden's London office since January 11, 1988, is a U.S. citizen, born in New York City, who is domiciled in London.  (Affidavit of Bruce M. Buck ("Buck Aff.") ¶2-3.)  Mr. Buck has resided in London continually and without interruption since July of 1983, and

---

[2]    When considering a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a district court need not confine its evaluation to the pleadings and may consider affidavits and other evidence submitted by the parties.  Land v. Dollar, 333 U.S. 731, 735 n.4 (1947); Exchange Nat'l Bank of Chicago v. Touche Ross & Co., 5441 F.2d 1126, 1130-31 (2d Cir. 1976).

continues to do so. (Buck Aff. ¶ 2.) Since 1988 through the present, Mr. Buck's
primary residence has been a home he owns in Chelsea Square, London, where he lives
with his wife and children. (Buck Aff. ¶4.) Mr. Buck has not voted in any State or
local election in the United States nor was he registered to do so during the past twenty
years. (Buck Aff. ¶ 4.) Since becoming a Skadden partner in 1988, Mr. Buck has not
filed resident tax returns in any U.S. state; during those years he has filed non-resident
tax returns in the states in which Skadden has offices. (Buck Aff. ¶3.) Mr. Buck owns
a vacation home in Snowmass Village, Colorado where he spends approximately
fourteen days per year. (Buck Aff. ¶ 4.) Mr. Buck intends to remain in England
indefinitely. (Buck Aff. ¶ 5.)

## C.    The Parties Consent to Dismissal

Based on these facts and applicable law, Skadden determined that it
could not be a party for diversity purposes and wrote to the Court to point out this
defect. The letter (a copy of which is attached to the attorney's statement of Stuart A.
Krause ("Krause Attorney Statement") as exhibit B) stated that based on *Herrick*, when
a partnership such as Skadden's which has numerous offices outside of the United
States, has partners that are U.S. citizens domiciled abroad, diversity jurisdiction is
absent. Thereafter Counsel for Angulo wrote to this Court stating that he had reviewed
the Herrick decision, agreed with Skadden's interpretation thereof and would therefore
agree to dismissal of the case and its re-filing in State court. (A copy of this letter is
attached to the Krause Attorney Statement at exhibit C.) On March 10, 2003, by
stipulation of the parties, Judge Berman dismissed the action and gave Skadden six

months to re-file in state court. (A copy of this stipulation and order is attached to the Krause Attorney Statement at exhibit D.)

**D.    The New York State Action**

On March 14, 2003 Skadden filed an action against Angulo in New York State Court claiming breach of contract, account stated and dishonored checks (the "State Court Action").  (A copy of the complaint is attached to the Krause Attorney Statement at exhibit E.)  Angulo answered, claiming as an affirmative defense that Skadden's bills were based on "inflated time records." Angulo also interposed a counterclaim claiming that he had overpaid his fees because of "false bills and inflated time records" and claiming a return of a portion of Skadden's fees which he had already paid. (A copy of the answer and counterclaim in the State Court Action ("Answer and Counterclaim") is attached to the Krause Attorney Statement at exhibit F.)

On May 8, 2003, Skadden moved for summary judgment on its account stated and dishonored check claims and for dismissal of the counterclaim. (Order and Judgment at 1.)  Angulo cross moved for dismissal of the breach of contract and dishonored check claims. (A copy of the Affidavit of Gerald Angulo in Opposition to Skadden Arps' Motion and in Support of his Cross Motion for Summary Judgment ("Angulo Aff.") and the June 25, 2003 affidavit of Angulo's counsel, Eric W. Berry ("Berry Aff.") (without exhibits) are attached to the Krause Attorney Statement as exhibits G and H.)  In this affidavit Angulo accused Skadden of "*Wild* over-billing and false billing records."  (Angulo Aff. ¶9 (emphasis in original).)  In addition, Angulo's

counsel also raised the issue of the allegedly fraudulent dismissal of the Prior Federal Action.  (Berry Aff. ¶¶ 2-3.)  On August 14, 2003, the State Court  granted summary judgment to Skadden awarding it $814,749.10 plus interest, and dismissing Angulo's counterclaim.   (Order and Judgment p.p. 14-15.)   Judgment for $1,238,890.31 was entered against Angulo on December 3, 2003.  Angulo timely filed a notice of appeal.

On January 5, 2004, Angulo filed a motion for recusal of Justice Kornreich and for reargument.  In his motion, Angulo claimed specifically that Skadden had done no work for Angulo in the Litigation after the affirmance by the Second Circuit of the District Court's judgment in that action, and that Angulo therefore owed no fees for any such fraudulently claimed work.  (A copy of the Affirmation of Eric W. Berry ("Berry Aff. II") in support of this motion is attached to the Krause Attorney Statement at exhibit I.)

On March 25, 2004, the State Court held oral argument on the motion for recusal and reargument. Angulo's counsel again raised the issue of the allegedly illegitimate $170,000 of post-appeal billings made by Skadden.  Justice Kornreich denied Angulo's motion for recusal and reargument, stating that she had already considered these arguments. (A copy of the transcript of this argument including Justice Kornreich's decision ("Transcript") is attached to the Krause Attorney Statement at exhibit J.)

**E.      The Instant Action**

Thereafter, on April 23, 2004, Angulo filed the above-captioned action, claiming subject matter jurisdiction based on diversity of citizenship.

**ARGUMENT**

**A.      This Court has No Subject Matter Jurisdiction**

"It has long been the case that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'  This time of filing rule is hornbook law. . . ." Grupo Dataflux v. Atlas Global Group, L.P., __ U.S. __, 124 S.Ct. 1920, 1924 (2004); Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998) ("the question of '[w]hether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced. . . .'").  Plaintiffs premise jurisdiction in this case on diversity between the parties.  (Complaint ¶ 5.)  To the extent pertinent here, the federal diversity statute gives the district courts jurisdiction over cases between (1) "citizens of different states" and (2) "citizens or subjects of a foreign state."  28 U.S.C. § 1332(a).  It is well established in this circuit that "United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990).  As a partnership takes on the citizenship of each of its partners, it is black letter law in this Circuit that subject matter jurisdiction in a suit against a partnership that includes partners who are

U.S. citizens domiciled abroad cannot be premised on diversity.  Id. at 69;  accord
Meadowcroft Assocs., Inc. v. Davis Polk & Wardwell, No. 01 Civ. 8377, 2001 WL
1112693, at *1 (S.D.N.Y. Sept. 21, 2001).

       Indeed, in May of 2001, the Second Circuit reiterated the Cresswell
ruling in a case in which Skadden was a party. See Herrick Co. v. SCS
Communications, 251 F.3d 315 (2d Cir. 2001).  In Herrick the Court noted that the
evidence in the record indicated that Skadden had partners who were U.S. citizens
domiciled abroad, and that if this were the case, Skadden could not be a party for the
purpose of diversity jurisdiction.  Id. at 322.  On remand, Skadden submitted sworn
responses to interrogatories.   (See Shamoon Aff. ¶ 3) The responses to those
interrogatories left no doubt that dating from 1994, when the Herrick action was filed,
there were Skadden partners who were domiciled abroad.  In its decision on remand, the
district court specifically noted that:

> After engaging in discovery on the issue, Herrick has
> conceded that it can not demonstrate that Skadden was a
> diverse party at the outset of this lawsuit.

Herrick Co. v. Vetta Sports, Inc., No. 94 Civ. 0905, 2002 WL 362760, at *5 (S.D.N.Y.
Mar. 5, 2002), aff'd in part, rev'd in part on other grounds, 360 F.3d 329 (2d Cir. 2004).

       "Domicile is 'the place where a person has his true fixed home and
principal establishment, and to which, whenever he is absent, he has the intention of
returning.'"  Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000) (citations
omitted).  It is incontrovertible that at all relevant times, there were and are at least two

9

Skadden partners, Christopher L. Baker and Bruce M. Buck, who are U.S. citizens domiciled abroad, in that they live, work and intend to remain indefinitely in France and England, respectively.  (See Affidavit of Christopher L. Baker ¶¶ 2-4 and Affidavit of Bruce M Buck ¶¶ 2-5.)  On that basis Skadden may not be a party for the purpose of diversity jurisdiction and this action must be dismissed because this Court has no jurisdiction over the parties.[3]

### B.    Plaintiffs' Fraud Claims Are Barred by Res Judicata

The doctrine of res judicata, or claim preclusion, holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."    Allen v. McCurry, 449 U.S. 90, 94 (1980); Monahan v. N.Y. City Dep't of Corrections, 214 F.3d 275, 284-85 (2d Cir. 2000).   "'Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'"  Id. at 285 (citations omitted).  "To prove the affirmative defense a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the

---

[3]    Angulo's contention to the contrary is apparently based on his claim that Skadden's filing of an action predicated on diversity on October 25, 2002 in the District of Delaware against Learning 2000, Inc. somehow belies these facts.  This is absurd.  First, the Delaware Court is in the Third Circuit and is not bound by the rulings in the Herrick case. As Skadden informed Judge Berman, Skadden believes Herrick was mistakenly decided as a matter of law and reserves the right to contest the issue els ewhere.  At no time in the Learning 2000 action did Skadden assert that it does not have partners who are U.S. citizens domiciled abroad.  Second, no positions taken by Skadden in Delaware could conceivably manufacture diversity jurisdiction within the Second Circuit, which is lacking based upon the uncontestable facts, and controlling caselaw.

plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Id.

In the instant case, Plaintiffs make three claims: (1) legal malpractice/breach of contract; (2) legal malpractice/breach of fiduciary duty, and (3) fraud upon the court. The first two claims are based on an allegation that Skadden agreed to, but did not, perform services with regard to the judicial dissolution of First Capital Partners, but billed Angulo for those services. The third claim of fraud upon the court is based on an allegation that, in order to escape discovery, Skadden misled this Court with regard to the domicile of its partners (and thus the availability of diversity jurisdiction over Skadden) to obtain dismissal of the case.

However, all of the alleged "facts" on which these claims were based were actually raised in the State Court Action by Angulo, both defensively and as a counterclaim. Specifically, the allegations that Skadden breached its professional services agreement with Angulo by fraudulently over-billing or billing for services which it did not perform with regard to the dissolution of First Capital Partners (Complaint ¶¶ 39-41, 44-48) were raised by Angulo in the State Court Action, both in the Answer and Counterclaim and in the Affidavit of Gerard Angulo in Opposition to Skadden, Arps Motion and in support of his Cross Motion in that case. (See Answer and Counterclaim ¶¶ 14-16; Angulo Aff. ¶¶ 9-10, 57-73.) The claim of "fraud on the court" (Complaint 50-58) was also specifically raised by Angulo's counsel at that time. (See Berry Aff. 2-3.)

11

Moreover, the State Court specifically addressed the fraudulent billing/failure to dissolve the First Capital Partners claims in its Order and Judgment, noting that "Angulo questions, <u>inter alia</u>, the time allegedly spent by Skadden attorneys and paralegals on his case in the year and a half following the Second Circuit's May 20, 1998 decision on the appeal. . . . .Angulo's current attorney has ascertained that . . . . as of June 2003  the New York Partnership had still not been dissolved." (Order and Judgment at 8-9).  However, "the Court [did] not find that any of the foregoing state[d] a defense of 'fraud'" (Order and Judgment at 9) and held that "Angulo may not set aside his contract with Skadden on the ground of 'fraud in the inducement through fraudulent misrepresentations. . . . ' " (Order and Judgment at 10.)  Noting, *inter alia*, that "the record evidence suggests that Angulo's representations of injured innocence are disingenuous [because] Angulo did not challenge these charges until Skadden commenced the instant action in March 2003," the State Court ruled that "Angulo has not made out a defense of fraud."  (Order and Judgment at 10.)  The State Court also ruled on and dismissed Angulo's counterclaim stating that "defendant has not made out his claim of 'fraud' nor has he established his defenses of 'mistake' or 'inequity.'" (Order and Judgment at 14.)

In his motion for recusal and reargument in the State Court Action Angulo again raised the issue of Skadden's allegedly fraudulent billings and failure to obtain judicial dissolution of First Capital Partners.  (Berry Aff. II ¶¶ 18-42.)[4]  Angulo's

---

[4]    Interestingly, Angulo also claimed in this affidavit that following the decision on the appeal in the Litigation "there was nothing to do with regard to the dis solution of First Capital Partners, and Angulo authorized no work. . . ." Berry Aff. II ¶ 25.

counsel also raised the issue at oral argument on the motion. (Transcript at 6-8.)  The State Court denied the motion stating that it had considered all of these arguments. (Transcript at 6, 9.)

   Moreover, to the extent that Angulo's claims, currently denominated as "malpractice," "breach of contract," or "breach of fiduciary duty" were not raised as such, they certainly could have been raised in the State Court Action.  There is a "well established rule that a plaintiff cannot avoid the effects of res judicata by "splitting" his claims into various suits based on different legal theories. . . ." Waldman v. Kiryas Joel, 207 F. 3rd 105, 110 (2nd Cir. 2000).  Under New York's[5] "transactional approach" to determining whether claims are part of the same cause of action for *res judicata* purposes, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based on different theories or seeking a different remedy." Yoon v. Fordham Univ. Faculty and admin. Ret. Plan, 263 F.3rd 196, 200 (2nd Cir. 2001)(citations omitted).  Angulo's claims certainly arise out of the same transaction on which the State Court Action was based – Skadden's representation of Angulo in the Litigation. Therefore, that action having gone to judgment, Angulo may not split his claims by asserting them in the instant case.

---

[5]  In a diversity action, a federal court must apply the choice of law rules of the state in which the court sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under New York's choice of law rules, New York law governs this action because Skadden's New York office handled the Litigation, which was filed in New York, and virtually all of Skadden's actions in connection with the Litigation took place in New York.  See Machleder v. Diaz, 801 F.2d 46, 51 (2d Cir. 1986) (under New York law, court must apply substantive tort law of state that has the most significant relationship with the occurrence and with the parties).

Finally, ACC is bound by any judgment against Angulo. This Court has held that "a party will be bound by the previous judgment if his 'interests were adequately represented by another vested with the authority of representation.' " Monahan at 286, citing Alpert's Newspaper Delivery, Inc. v. The New York Times Co., 876 F.2d 266, 270 (2nd Cir. 1989). It is incontrovertible that Angulo is vested with the authority to represent his wholly-owned corporation, ACC, as its sole shareholder. (Complaint ¶ 6.)

It cannot be disputed that (1) the State Court Action involved an adjudication on the merits; (2) plaintiff Angulo was a party to the State Court Action and that plaintiff ACC, Angulo's wholly owned corporation, is bound by the judgment against Angulo; and (3) the claims asserted in this action were raised or should have been raised in the State Court Action because they arose out of the same transaction and are predicated on the same facts. Monahan, 214 F.3d at 285; Yoon, 263 F.3d at 200. Therefore, plaintiffs' claims in this action are barred by the doctrine of *res judicata* and the action must be dismissed.

## C.    Plaintiffs' Malpractice Claims Are Barred By the Statute of Limitations

Under New York law, plaintiffs' "Legal Malpractice – Breach of Contract" and "Legal Malpractice – Breach of Fiduciary Duty" claims (Complaint ¶¶ 38-48) are time-barred. CPLR 214(6) provides:

The following actions must be commenced within three years:

14

. . . .

(6)  an action to recover damages for malpractice, other than medical dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort. . . .

N.Y. C.P.L.R. § 214(6) (McKinney 2003).

The purpose of CPLR 214(6) is to assure that the limitations period governing professional malpractice shall be three years, regardless of whether the claim is postured in tort or contract.  This means that a malpractice claim, regardless of whether styled in professional negligence or as a breach of the agreement between client and professional, is subject to the three-year limitations period.  Moreover, a claim by the client that the professional breached a fiduciary duty is governed by this section as well, so long as it seeks the same damages and is based on the same conduct as would be a traditional negligence malpractice or breach of contract malpractice claim.  Daniels v. Lebit, 299 A.D.2d 310, 749 N.Y.S.2d 149 (2d Dep't 2002):

Additionally, the plaintiff's causes of action alleging breach of contract, breach of fiduciary duty, and fraudulent misrepresentation were properly dismissed by the Supreme Court as they are duplicative of the legal malpractice cause of action.  Those causes of action arise from the same facts as the malpractice claim, and do not allege distinct damages.

Id. at 310, 749 N.Y.S.2d at 150.[6]

---

[6]     It is also worth noting that so long as a claim for breach of fiduciary duty seeks monetary damages, the limitations period for such a claim is in any event three years.  Svenska Finans

As the New York Court of Appeals held, a cause of action for legal malpractice accrues for limitations purposes at the time the attorney commits the error in question, not when the plaintiff feels the resulting injury or the claim is discovered. <u>Glamm v. Allen</u>, 57 N.Y.2d 87, 453 N.Y.S.2d 674 (1982); <u>see also</u> <u>Adamson v. Bachner</u>, No. 01 Civ. 10213, 2002 WL 31453096 (S.D.N.Y. Oct. 31, 2002); <u>Kahn v. Hart</u>, 270 A.D.2d 231, 704 N.Y.S.2d 126 (2d Dep't 2000). Assuming for the purpose of this motion only, that the allegations in the complaint are true, any claim for malpractice would have accrued <u>at the latest</u> in October 1999 when Angulo received Skadden's last bill for itemized services, and any claim in regard to such malpractice could therefore have been filed no later than October of 2002. Plaintiffs' claims are indisputably time-barred and must be dismissed.

**D.    Plaintiffs Fail to State a Claim for Fraud on the Court**

Plaintiffs have failed to state a claim for "fraud upon the court." First, no damages are available for fraud upon the court, which is a purely equitable claim for relief from a judgment. Fed. R. Civ. P. 60(b)(3);[7] <u>Gleason v. Jandrucko</u>, 860 F.2d 556,

---

<u>Int'l, BV v. Scolaro, Shulman, Cohen, Lawler & Burnstein, P.C.</u>, 37 F. Supp. 2d 178 (N.D.N.Y. 1999).

[7]    Rule 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons . . . (3) fraud . . ., misrepresentation, or other conduct of an adverse party . . . . The motion shall be made within a reasonable time and for reasons (1), (2) and (3) not more that one year after the judgment, order, or proceeding was entered or taken . . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or . . . to set aside a judgment for fraud upon the court.

558 (2d Cir. 1988).  Second, even assuming that Plaintiffs' allegations that Skadden's counsel misrepresented to the court that Skadden had partners who were U.S. citizens domiciled abroad (which, in fact, it does), it is undisputed that Angulo's counsel consented to the dismissal.  (See Stipulation and Order attached to Krause Attorney Statement., Exh. D.)  Angulo was not required to consent to the dismissal, and had every opportunity at that time to challenge Skadden's representations as to the domicile of its partners. Therefore, having consented to the dismissal and waived the opportunity to challenge Skadden's representations, Angulo may not seek relief from this Court's Stipulation and Order dismissing the Prior Federal Action.  See Gleason, 860 F.2d at 560 ("[A]n aggrieved party seeking relief under the saving clause of Rule 60(b) still must be able to show that there was no 'opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action.'") (quoting Serzysko v. Chase Manhattan Bank, 461 F.2d 699, 702 n.2 (2d Cir. 1972) (per curiam)).  Therefore Plaintiffs are not entitled to relief because they "had ample opportunity in the prior proceeding to uncover the alleged fraud."  Gleason, 860 F.2d at 560.

---

Fed. R. Civ. P. 60(b).  It should be noted that Angulo's counsel first raised the issue of his alleged "suspicions" about the veracity of Skadden's claims regarding diversity in an affidavit filed in the State Court Action dated June 23, 2003 in opposition to Skadden's motion for summary judgment.  (See Berry Aff. ¶ 2.)  However, Angulo did not at that time choose to file what would have been a timely motion in this Court to vacate the dismissal of the Prior Federal Action, but instead waited until after the State Court granted summary judgment to Skadden and denied his subsequent motion for recusal and reargument.

## CONCLUSION

For all of the foregoing reasons, this Court should grant defendant's motion to dismiss the Complaint.

Dated:      New York, New York
            June 10, 2004

ZEICHNER ELLMAN & KRAUSE LLP

By:/s/ Stuart A. Krause_____
     Stuart A. Krause, Esq. (SK-3847)
     575 Lexington Avenue
     New York, New York  10022
     (212) 223-0400

     Attorneys for Defendant
       Skadden, Arps, Slate, Meagher
       & Flom LLP

440746.01/3229-001/BG

18