Stuart A. Krause (SK-3847)
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400

Attorneys for Defendant
  Skadden, Arps, Slate, Meagher & Flom LLP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGULO CAPITAL CORP.<br>and GERARD ANGULO,<br><br>         Plaintiffs,<br><br>    - against -<br><br>SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP,<br><br>         Defendant. | Civil Action No.: 04 CV 3114 (KMW) |

REPLY
MEMORANDUM OF LAW
IN FURTHER SUPPORT OF
<u>MOTION TO DISMISS</u>

**ZEICHNER ELLMAN & KRAUSE LLP**
**575 Lexington Avenue**
**New York, New York 10022**
**(212) 223-0400**
**Fax: (212) 753-0396**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

I.    Preliminary Statement ........................................................................................1

II.    There Is No Subject Matter Jurisdiction............................................................2

    A.    Skadden Has Partners Who Are Foreign Domiciliaries ............................2

    B.    Judicial Estoppel Is Inapplicable ...............................................................4

    C.    Plaintiffs' Discovery Demands Were Legitimately Rejected .....................5

III.    Plaintiffs' Legal Malpractice Claims Are Time-Barred and Barred by Res Judicata ..............................................................................................................5

    A.    Plaintiffs' Claims Are Time-Barred ...........................................................5

    B.    Plaintiffs' Claims Are Barred by Res Judicata...........................................7

IV.    Plaintiffs Have Not Stated Claim for Fraud Upon the Court.................................9

V.    Conclusion..........................................................................................................10

TABLE OF AUTHORITIES

CASES

AT&T v. Salesian Society, Inc., 77 A.D.2d 706, 430 N.Y.S.2d 408 (3d Dep't 1980)..................................................................................................................9

Gleason v. Jandrucko, 860 F.2d 556 (2d Cir. 1988)...........................................................10

Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238 (1944)...............................10

Herrick Co. v. Vetta Sports, Inc., 90 Civ. 0905 (RPP), 2002 WL 362760 (S.D.N.Y. March 2, 2002)…………………………………………………………………….5

McCoy v. Feinman, 99 N.Y.2d 295, 755 N.Y.S.2d 693 (2002) ......................................7, 8

Mukasa v. Balick & Balick, No. Civ. A. 02-218, 2002 WL 1971921 (D. Del. Aug. 27, 2002) ........................................................................................................7

Selected Risks Insurance Co. v. Kobelinski, 421 F. Supp. 431 (E.D. Pa. 1976).................5

Sherman v. Ansell, 207 A.D.2d 537, 616 N.Y.S.2d 90 (2d Dep't 1994)............................9

Simcuski v. Saeli, 44 N.Y.2d 442, 406 N.Y.S.2d 259 (1978)............................................6

Wight v. Bankamercia Corp., 219 F.3d 79 (2d Cir. 2000) ...............................................4, 5

STATUTES

C.P.L.R. 214-a ................................................................................................................7

C.P.L.R. 214(6).............................................................................................................7, 8

Defendant Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") respectfully submits this reply memorandum of law in further support of its motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

I.

Preliminary Statement

Plaintiffs' slanderous allegations and delusional conspiracy theories simply cannot change the undisputed facts of this case. As the attached affidavits conclusively demonstrate, Skadden is a partnership which includes all of its partners worldwide, and a number of those partners, who are full equity partners in Skadden, are U.S. citizens domiciled abroad and are citizens of no other countries. As a result of these incontrovertible facts, Skadden cannot be a party for diversity purposes, and this suit, premised solely on diversity, must be dismissed for lack of subject matter jurisdiction.

In addition, as demonstrated in Skadden's opening memorandum of law in support of its motion to dismiss ("Skadden Mem.") Plaintiffs' alleged malpractice claims are time barred as they accrued, at the latest, in October 1999, more than three years prior to the commencement of this suit and do not fall within any exception to the three-year limitations period. (Skadden Mem. at 14-16.) These claims are also barred by res judicata, as they could have been and in fact were raised and considered by the Court in the action filed by Skadden against Angulo in New York State court on March 14, 2003, in which Skadden ultimately obtained a judgment against Angulo for its unpaid fees (the "State Court Action"). Finally, aside from being conclusively

disproved by the incontrovertible evidence submitted by Skadden, Plaintiffs' fraud on the Court claim is both barred by the findings in the State Court Action and fails to state a claim for relief.

II.

There Is No Subject Matter Jurisdiction

A.  Skadden Has Partners Who Are Foreign Domiciliaries

Plaintiffs concede in their brief, as they must that, at least in this Circuit, a partnership which includes partners who are U.S. citizens domiciled abroad cannot be a party for diversity purposes.  (Plaintiffs' Memorandum of Law in Opposition to Skadden's Motion to Dismiss the Complaint ("Plaintiffs' Mem.") at 8-9.)  The fact that Christopher Baker and Bruce Buck are both partners in Skadden is sufficient in and of itself to destroy diversity.  (Affidavit of Earle Yaffa ("Yaffa Aff.") ¶ 2.)  However, Skadden is submitting herewith affidavits from three additional full equity partners in Skadden, Hilary S. Foukes, Nobuhisa Ishizuka and Alan G. Schiffman, who are foreign domiciliaries and citizens only of the United States, each of whose membership in Skadden is sufficient to destroy diversity.[1]

For example, Hilary S. Foukes, a full equity partner in Skadden since 1995, is a United States citizen who has lived and worked in Germany for the past sixteen years, where he lives with his wife and minor children.  (Affidavit of Hillary S.

---

[1]  In addition to the partners listed above, Skadden has a number of additional full equity partners who are U.S. Citizens and residents of foreign countries.  For reasons of economy and practicability Skadden has not submitted affidavits from all of them, but only from the representative few listed above. (Yaffa Aff. ¶ 5.)

2

Foukes, dated July 15, 2004 ("Foukes Aff.").)  Nobuhisa Ishizuka, who has been a full equity partner in Skadden since 2000, has lived and worked in Tokyo for the last five years along with his wife and minor children.  (Affidavit of Nobuhisa Ishizuka, dated July 14, 2004 ("Ishizuka Aff.").)  Alan G. Schiffman, a full equity partner in Skadden since 1998, has lived and worked in Hong Kong since 1996, where he even holds an official Hong Kong resident identity card.  (Affidavit of Alan G. Schiffman, dated July 26, 2004 ("Schiffman Aff.").)  Additional details are included in the affidavits.  All of these Skadden partners intend to remain indefinitely in the countries in which they now live.  (Foukes Aff. ¶ 6; Ishizuka Aff. ¶ 5; Schiffman Aff. ¶ 6.)

Moreover, as additionally verified by the affidavit of Earle Yaffa, all of the partners from whom Skadden has submitted affidavits are partners in Skadden, Arps, Slate, Meagher & Flom LLP, the Delaware LLP whose Statement of Qualification appears at Tab 5 and whose Annual Report appears at Tab 6 of the Declaration of Eric W. Berry in Opposition to Skadden's Motion to Dismiss ("Berry Decl.").  (See Yaffa Aff. ¶ 2.)  Moreover, all of these individuals are full equity partners in Skadden.  (Yaffa Aff. ¶ 2.)

As explained in Skadden's opening brief, subject matter jurisdiction cannot be manufactured or created by consent.  (Skadden Mem. at 8-10.)  The fact that both the attorneys handling Skadden's case for unpaid fees against Angulo, as well as Angulo's counsel, originally mistakenly believed that subject matter jurisdiction existed in federal court, simply cannot make it so.  When it came to the attention of the Skadden attorneys involved in the Angulo litigation that there was a problem with subject matter jurisdiction, Skadden's counsel promptly wrote to this Court and to

3

Angulo's counsel regarding the jurisdictional defect. Thereafter, with the written consent of Angulo's counsel, the suit was dismissed and refiled it in New York State court. (Skadden Mem. at 3-6.)

Plaintiffs' reference to the brief filed by Skadden in the Learning 2000 case lends no support to their position that there is jurisdiction for this action. As pointed out in Skadden's opening brief, the Learning 2000 cases were filed in different federal circuits in which the Cresswell and Herrick cases that deal directly with diversity jurisdiction over a partnership are not controlling. Moreover, nowhere in its Learning 2000 brief does Skadden claim that it has no partners who are U.S. citizens domiciled abroad or that Skadden could possibly be a party for diversity purposes in any federal court located in this Circuit. (Berry Decl., Ex. 1.)

B.   Judicial Estoppel Is Inapplicable

Subject matter jurisdiction cannot be created by waiver, consent or judicial estoppel. Wight v. Bankamercia Corp., 219 F.3d 79, 90 (2d Cir. 2000), inexplicably cited by plaintiff as support for the contrary, in fact lends no support to such a proposition. In that case, the Second Circuit made it abundantly clear that judicial estoppel could not be a basis for creating subject matter jurisdiction:

> It is axiomatic that a lack of subject matter jurisdiction may be raised at any time "'even by a party who originally asserted jurisdiction.'" . . . The bottom line is that irrespective of how the parties conduct their case, the courts have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits.

Id. at 90 (citations omitted).[2]

---

[2]   Selected Risks Ins. Co. v. Kobelinski, 421 F. Supp. 431 (E.D. Pa. 1976), also cited by Plaintiffs, is similarly irrelevant, as in that case estoppel was used to

4

C.      Plaintiffs' Discovery Demands Were Legitimately Rejected

As explained in the letter from Skadden's counsel, Plaintiff's discovery requests were rejected because they were made in violation of the Federal Rules -- they were premature under the explicit language of the Rules cited in the letter. (Berry Decl., Ex. 4.) Skadden has nothing to hide. As evidenced by the affidavit of Earle Yaffa, all the Skadden partners who are U.S. citizens domiciled abroad who have submitted affidavits in support of this motion are full equity partners in Skadden. (Yaffa Aff. ¶ 2.) Moreover, Skadden is hereby providing the answers to the interrogatories submitted by Skadden in the Herrick case ("Interrogatory Responses"), on the basis of which the plaintiffs in that case conceded that there was no jurisdiction. Herrick Co. v. Vetta Sports, Inc., 90 Civ. 0905 (RPP), 2002 WL 362760 (S.D.N.Y. March 2, 2002) at *5. (See Interrogatory Responses, Ex. A to August 3, 2004 Attorney's Statement of Stuart A. Krause.)

As the incontrovertible evidence demonstrates that Skadden is a partnership with numerous partners who are domiciled abroad, this Court has no subject matter jurisdiction and this action must be dismissed

III.

Plaintiffs' Legal Malpractice Claims
Are Time-Barred and Barred by Res Judicata

A.      Plaintiffs' Claims Are Time-Barred

---

prevent a party that had previously denied the existence of subject matter jurisdiction from asserting it, not to create subject matter jurisdiction where none existed.

Angulo's contention that the statute of limitations has been equitably tolled because of alleged "concealment" by Skadden is not only devoid of any factual basis, but more important for present purposes, contrary to New York law.

Under New York law as interpreted by the New York Court of Appeals, the statute of limitations for legal malpractice runs from the time of the alleged malpractice, not from the date of the discovery of the malpractice, despite any representations which may have been made by the attorney at the time the malpractice was committed. McCoy v. Feinman, 99 N.Y.2d 295, 301, 755 N.Y.S.2d 693, 697 (2002). In McCoy, the plaintiff-wife in an underlying divorce action sued her former counsel, whom she had mistakenly believed had secured for her rights to her former husband's pre-retirement death benefits. Id. at 297, 755 N.Y.S.2d at 695. The former attorney conceded that despite having read into the record in open court a stipulation of settlement in which he agreed to prepare and file on the wife's behalf a Qualified Domestic Relations Order and a proposed judgment of divorce, which would have served to secure the wife's rights to the benefits, he had never prepared or filed either document. Id. at 299, 755 N.Y.S.2d at 695-6. Several years later, when her former husband died, the lawyer attempted unsuccessfully to obtain the benefits for the wife, but did not inform her that his subsequent failure to do so was because of his earlier failure to file the QDRO and proposed judgment. Id. Five years later, the wife first learned of her former lawyer's failure to file these documents, and brought suit against him. Id. at 300, 755 N.Y.S.2d at 696. The New York Court of Appeals affirmed dismissal of the suit on statute of limitations grounds. Id. at 301, 755 N.Y.S.2d at 697. In the words of the Court of Appeals, "we have recognized no exception to measuring

the accrual date from the date of injury caused by the attorney's malpractice." Id. Thus, even had Skadden made any misrepresentations with regard to the work it had done for Plaintiffs (which it did not), as noted in Skadden's opening brief (Skadden Mem. at 14-16), any malpractice claims against Skadden accrued at the latest in October 1999, and thus are long since barred by New York's three-year statute of limitations, C.P.L.R. 214(6).[3]

The cases cited by Plaintiffs in support of the timeliness of their "malpractice" claims are totally inapposite. Simcuski v. Saeli, 44 N.Y.2d 442, 406 N.Y.S.2d 259 (1978), is a medical malpractice case governed by CPLR 214-a, a different statute from CPLR 214(6) which applies to legal malpractice claims. Mukasa v. Balick & Balick, No. Civ. A. 02-218, 2002 WL 1971921 (D. Del. Aug. 27, 2002), also cited by plaintiff, is a legal malpractice case, but it is based on Delaware, not New York Law.

B.  Plaintiffs' Claims Are Barred by Res Judicata

Finally, the allegation of fraudulent billing for work not performed, including the claim that partnership entities had not been dissolved, was previously raised, litigated and lost by Angulo as both a defense and counterclaim in the State Court Action. (See Skadden Mem. at 10-14.) As the State Court rejected Angulo's defense and dismissed his counterclaim (Decision & Order at 14-15), Plaintiffs have had their day in Court and are barred by res judicata by asserting a malpractice claim

---

[3]  Moreover, Angulo fails to point to any representation by Skadden that any entity was ultimately dissolved or how Angulo was conceivably damaged by the continued existence of any such entity.

7

(see Skadden Mem. at 10-14). Indeed, as noted in Skadden's opening memorandum, Angulo specifically raised the claim that "no 'Certificate of discontinuance of Doing Business as Partners' was ever filed [and] First Capital Partners remains an 'active' corporation to this day" in his opposition to Skadden's summary judgment motion and in support of his cross-motion for summary judgment in the State Court Action ("Angulo Mem. in Opposition")[4] which the State Court explicitly rejected. (See Skadden Mem. pp. 10-11) It is no wonder that Mr. Angulo now seeks another forum for his claims.

The case relied upon by Plaintiffs, Sherman v. Ansell, 207 A.D.2d 537, 616 N.Y.S.2d 90 (2d Dep't 1994), has no application to the case at bar. In Sherman, the client who had been sued for unpaid fees had no knowledge of her potential malpractice claim during the litigation of the fee action against her since the $36,000 liability which resulted from the malpractice did not surface until six months later when the marital residence was sold. Id. at 91, 626 N.Y.S.2d at 538. In the instant case, Angulo admits that he learned of the "alleged malpractice" during the pendency of the State Court Action (Plaintiffs' Mem. at 20-21) and before he filed his opposition to Skadden's motion for summary judgment, and in fact included this allegation in his opposition to the motion (Krause Aff., Ex. G ¶ 68). Moreover, although nothing prevented him from doing so, Angulo admits that at no time during the State Court action did he even

---

[4] The Angulo Mem in Opposition appears at tab G to the June 10, 2004 Attorney's Statement of Stuart A. Krause submitted in support of Skadden's motion to dismiss ("Krause Aff.").

8

attempt to amend the counterclaim he brought in that action to add a malpractice claim.[5] (Plaintiff's Mem. at 23.)

IV.

Plaintiffs Have Not Stated A Claim for Fraud Upon the Court

As the evidence submitted herewith uncontrovertibly establishes, Skadden has not committed fraud on the Court because it did not, at any time, make any misrepresentations to this Court regarding the domicile of its partners. Indeed, Skadden acted totally responsibly in promptly notifying the Court and Angulo of the absence of subject matter jurisdiction in the action it mistakenly brought against Angulo in this court in 2002 (the "Prior Federal Action"). (See Skadden Mem. at 3-6.)

In any event, as discussed in Skadden's opening memorandum, Plaintiffs' complaint fails to state a claim for fraud upon the court, which is a purely equitable claim for relief from a judgment. (Skadden Mem. at 16-17.) Here, there was no judgment, just a voluntary dismissal of a case, with Angulo's consent, which was later

---

[5] Through a remarkably convoluted exercise in bootstrapping, Angulo would have us believe that because he took the position in the State Court Action that he had never asked Skadden to dissolve the partnership, he could not amend his State Court counterclaim to formally plead malpractice, but that the State Court's ruling against him on that defense somehow created from its ashes a cause of action against Skadden for malpractice. (Plaintiff. Mem. at 23.) Such reasoning simply defies logic and does not merit a response. AT&T v. Salesian Soc'y, Inc., 77 A.D.2d 706, 430 N.Y.S.2d 408 (3d Dep't 1980), cited by Plaintiffs in support of their position, is inapposite as it involved two litigations between different parties, rather than two litigations between the same parties, in which the court in the first suit had specifically declined to consider the issue that was later decided in the second. Id. at 706, 430 N.Y.S.2d at 408-09. In the instant case, both litigations were between the same parties (or parties in privity with them), and Angulo admits that he never sought leave from the court to amend his counterclaim in the State Court Action. Moreover, the State Court did in fact consider Angulo's claim that partnership entities were not dissolved.

9

refiled and fully litigated in New York State court.  <u>Hazel-Atlas Glass Co. v. Hartford Empire Co.</u>, 322 U.S. 238 (1944) cited by Plaintiffs, lends no support to their position.  In <u>Hazel-Atlas</u>, the plaintiff sued to set aside a judgment against it that was allegedly based on fraud.  As noted above, in the instant case there is no judgment to be set aside.  Moreover, as in <u>Gleason v. Jandrucko</u>, 860 F.2d 556, 588 (2d Cir. 1988), Angulo having quite appropriately consented to the dismissal rather than frivolously challenging the domicile of various Skadden partners, may not now complain of his own decision.  Of course, had he done so, Skadden would have produced the same affidavits which it has now produced, which establish beyond any doubt that Skadden is a partnership which includes partners who are domiciled abroad, and that no subject matter jurisdiction exists either in this action or in the Prior Federal Action.

V.

<u>Conclusion</u>

For all of the foregoing reasons, this Court should grant defendant's motion to dismiss the Complaint.

Dated:   New York, New York
         August 4, 2004

                                        ZEICHNER ELLMAN & KRAUSE LLP

                                        By: _/s/Stuart A. Krause_____
                                            Stuart A. Krause, Esq. (SK-3847)
                                            575 Lexington Avenue
                                            New York, New York  10022
                                            (212) 223-0400
                                            Attorneys for Defendant