UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------x
ANGULO CAPITAL CORP.                    :
and GERARD ANGULO,                      :
                                        :
                    Plaintiffs,         :
                                        :
    - against -                         :     Civil Case No.   04 Civ.  3114 (KMW)
                                        :
SKADDEN, ARPS, SLATE,                   :
MEAGHER & FLOM, LLP,                    :
                                        :
                    Defendant.          :
---------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO SKADDEN'S MOTION TO DISMISS THE COMPLAINT

ERIC W. BERRY LAW OFFICE PC
*Attorneys for defendants Angulo Capital*
*Corp. and Gerard Angulo*
509 MADISON AVENUE, SUITE 2004
NEW YORK, NEW YORK  10022
(212) 355-0777

New York, New York
July 9, 2004
Eric W. Berry [EB 8598]

Dockets.Justia.com

**Table of Contents**

Table of Authorities ................................................................................ (iii)

A.  The Nature of this Action................................................................1

B.  Summary of Angulo's Posiiton on this Motion...................................2

C.  Summary of Facts Pertinent to this Motion.............................. ..................................3

   (i) Skadden's Role as Angulo's Attorneys in
   The *Nemazee v. Angulo* Case...........................................................3

   (ii) Skadden's Continued Billing After the Affirmance...................................3

   (iii) Skadden' Fraud on the Court in the Federal Fees Action.........................4

   (iv) The State Court Fees Action....................................................6

   (v) Judge Kornreich's Findings in the State Fees Action
   Actually Support Angulo's Malpractice Claims.............................................7

D.  Argument ....................................................................................7

Point I:     Skadden's Contention that it Is A Diversity-Destroying
             Party in this Case, and All Other Cases, Because its
             Partners Include U.S. Citizens Who
             Are Non-U.S. Domiciliaries Should Be Rejected ................................7

      (a)     Skaddens' Contentions that Buck and Baker
              Destroy Diversity Are Refuted By Other Cases
              In Which it Has Invoked Diversity Jurisdction ..................................7

      (i)     The Law is Clear that a Partner Domiciled Outside
              The U.S. Destroys Diversity and Skadden has Always Known it ......................8

      (ii)    The *Herrick Co.* Case Drove Emphatically Drove
              The Relevant Law Home To Skadden ................................................9

      (iii)   Buck's and Baker's Status Was an Issue in *Herrick* ..........................10

(iv)    Skadden's Knowledge of the Relevant Law is Confirmed
        by The *Jordan (Bermuda) Investment Co.* Case. ..................................11

(v)     Skadden's Assertion of Diversity Jurisdiction
        In the *Learning 2000* Case ..................................11

(vi)    Skadden's Six Pleadings Admitting Diversity ..................................12

(b)     Skadden is Judicially Estopped From Disputing Diversity ..................................12

(c)     Buck is A Member of Skadden-UK Rather than the Skadden-US ..................................13

(d)     Voluminous Circumstantial Evidence Indicates
        That Baker is Not a Diversity Destroying Partner ..................................14

(e).    Skadden's Bizarre Refusal to Respond to Plainitiffs'
        Discovery Demands on Issues Relating to the
        Status of Baker and Buck ..................................15

Point II:    The Legal Malpractice Claims Are Timely ..................................17

Point III:   The Fraud on the Court Claim is Not  Barred
             By *Res Judicata or* Collateral Estoppel ..................................19

Point IV:    The Legal Malpractice Claims Are Not Barred by
             Collateral Estoppel or *Res Judicata* ..................................20

(a)     There is No Basis for Issue Preclusion ..................................20

(b)     *Res Judicata* is Not Applicable ..................................22

Point V:     Plaintiffs Have Stated a Claim for Fraud on the Court ..................................24

E.    Conclusion ..................................25

**Table of Authorities**

**Cases**                                                        **Page(s)**

*Aguirre v. Nagel*,
270 F. Supp. 535 (E.D.Mich. 1967) ......................................................15

*AT&T v. Salesian*,
77 A.D.2d 706, 430 N.Y.S. 2d 408 (3d Dept. 1980) ............................21,23

*Carden v. Arkoma Associates*,
494 U.S. 185 (1990) ......................................................8, 15, 16

*Cerbone v. International Ladies' Garment Workers' Union*,
768 F.2d 45  (2d Cir. 1985) ......................................................18

*BAC Local Union 15 Pension Fund*, *v. Cromwell*,
2002 WL 31761565  (W.D. Mo.) ......................................................25

*E.R. Squibb & Sons V. Accident & Casualty Ins*.,
160 F.3d 925, 940-941  (2d Cir. 1998) ......................................................16

*Piracci Construction Co. v Skidmore, Owings & Merrill*,
490 F. Supp. 314 (S.D.N.Y.  1980) ......................................................18

*Cresswell v. Sullivan & Cromwell*,
922 F.2d 60 (2d Cir. 1990), *cert. denied*, 505 U.S. 1222 (1992) ............................................9, 11

*Davis v. Loftus*,
2002 WL 31031467 (Ill.App. 1st Dist.)

.......................................................................15

*E.g.*, *Simcuski v. Saeli*,
44 N.Y.2d 442, 406 N.Y.S.2d 259  (1978) ...............................................................17

*Equal Economic Opportunity Commission  v. Sidley Austin Brown & Wood*,
315 F.3d 696 (7th Cir. 2002) ........................................................................... 15, 16

*Gleason v. Jandrucko*,
860 F.2d 556  (2d Cir. 1988) ...........................................................................24

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
322 U.S. 238, 64 S.Ct. 997,  88 L.Ed 1250 (1944) ...................................................24

*Herrick Company  v. SCS Communications, Inc.*,
251 F.3d 315 (2d Cir. 2001) ...........................................................5, 9, 10

**Cases (con'd)**
**Page(s)**

*Herrick Co. v. Vetta Sports, Inc.*,
2002 WL 362760 (S.D.N.Y.) ...................................................................9, 10

*Jordan (Bermuda) Investment Co. v. Hunter Green Investments*, LLC,
205 F. Supp.2d 243, 254-256 (S.D.N.Y. 2002) ...........................................................11

*Maharaj v. Bankamerica*,
128 F.3d 94, 98 (2d Cir. 1997) .........................................................................13

*Matter of Mulrow*,
226 A.D.22d 61,  650 N.Y.S.2d 668  (1ª Dept. 1996) ...............................................18

*Mukasa v. Balick & Balick*,
2002 WL 1971921 (D. Del.) ...................................................................18 n.4

*Neel v. Magana, Olney, Levy, Cathcart and Gelfand*,
 6 Cal.3d 176,  491 P.2d 421 (1971) ..................................................................19 n.5

*Neryave v. Solon*,
 6 A.D.3d 510, 775 N.Y.S.2d 348  (2d Dept. 2004)............................................................21, 23

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989) ....................................................................................................13

*Owen v. MacKinnon*,
6 A.D.2d 684, 775 N.Y.S.2d 565 (2d Dept. 2004)....................................................18

*Peters v. Milton Hall Surgical Associates, LLC*,
2003 WL 21730606 (E.D.La.)..................................................................................... 16

*Reed Elsevier, Inc. v. The Credit Index*,
2001 WL 1478683 (S.D.Ohio)....................................................................................16

*Sadat v. Mertes*,
615 F.2d 1176, 1186 (7th Cir. 1980) .......................................................................15 n3

*SCS Communications v. Herrick Co.*,
360 F.3d 329 (2d Cir. 2004) .......................................................................................10

*Selected Risks Insurance Co. v. Kobelinski*,
421 F. Supp. 431(E.D. Pa. 1976) ...............................................................................12

**Cases (con'd)**
**Page(s)**

*Sherman v. Ansell*,
207 A.D.2d 537, 538, 616 N.Y.S.2d 90 (2d Dept 1994) ...............................20, 22, 23

*Smith v. Carter*, 545 F.2d 909 (5th Cir.),
*cert. denied*, 431 U.S. 955, 97 S.Ct. 2677, 53 L.Ed.2d 272 (1977) .............................8

*Smith v. Russell Sage College*,
54 N.Y.2d 185, 445 N.Y.S.2d 68 (1981) ..............................................................19, 22

*Wight v. Bankamerica Corp.*,
219 F.3d 79, 90 (2d Cir. 2000) ...................................................................................12

*Workman v. Bell*,

227 F.3d 331, 336  (6th Cir. 2000) ...........................................................................................23

*Wunderlich v.  Hampton Design & Construction Group, Inc.*,
5 A.D.2d 158, 160, 773 N.Y.S.2d 54, -  (1st Dept. 2004) ............................................19, 20, 21

**Statutes**

United States Code

28 U.S.C. §1332.........................................................................................................14, 15
28 U.S.C. §1332(a)(2) ...............................................................................................15 n3

New York Consolidated Laws
  Civil Practice Law and Rules

§3025(b) ........................................................................................................................21
§3212(f).........................................................................................................................23
§3214  .....................................................................................................................2, 6, 21

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
SKADDEN'S MOTION TO DISMISS THE COMPLAINT**

Plaintiffs Gerard Angulo and Angulo Capital Corp. respectfully submit this memorandum

of law, and the accompanying July 9, 2004 declarations of Angulo and Eric W. Berry ("plfs.' decls."),

in opposition to the motion by Skadden, Arps, Slate, Meagher & Flom, LLP to dismiss. The motion

argues that jurisdiction based on diversity does not exist and that Angulo has failed to state a claim.

**A. The Nature of this Action**

Plaintiff Gerard Angulo is the shareholder of plaintiff Angulo Capital Corp. The complaint

asserts claims of legal malpractice and "fraud on the court" against the Delaware limited partnership

which operates Skadden's offices within the United States ("Skadden" or "Skadden-U.S.") The

complaint is annexed as Exhibit K to the June 9, 2004 Statement of Stuart Krause in support of

Skadden's motion to dismiss.

The legal malpractice claim alleges that Skadden failed to dissolve certain entities, including

First Capital Partners, a company in which Anglo Capital Corp. was a partner. The fraud on the

court claim asserts that Skadden falsely represented in a legal fees action against Angulo, *Skadden,*

*Arps, Slate, Meagher & Flom, LLP v. Angulo*, Civil Case No. 02 Civ. 9322 (RMB) (sometimes, "the

Federal Fees Action"), that: it was not entitled to invoke federal diversity jurisdiction and that it was

was therefore required to dismiss that action and re-file it in the New York State Courts. More

specifically, Skadden falsely represented that certain partners were domiciled outside of the United

States, and that the firm was therefore neither the citizen of a state nor the citizen of a foreign state.

In reality, Skadden has never been disabled from invoking the federal diversity jurisdiction,

as demonstrated by the fact that contemporaneously with its dispute with Angulo, it is has been prosecuting a separate fees action in the U.S. District Court in Delaware in which federal subject matter jurisdiction is premised solely upon diversity. The real reason Skadden sought to dismiss the Federal Fees Action was to avoid the effect of a discovery order by Judge Berman in the Federal Fees Action which would have allowed Angulo to establish, at minimum, that $170,000 of the fees it was seeking were based upon fictitious time charges.

After fraudulently obtaining dismissal of the Federal Fees action Skadden then refiled the case in the New York State Supreme Court in Manhattan ("the State Court Fees Action"), and then moved *immediately* for summary judgment, and thereby automatically staying under CPLR § 3214. Skadden's summary judgment motion was granted, and Skadden obtained a judgment in the State Court Fees action for more than $814,7490 against Angulo, together with another $400,000 in interest, amount which are in addition to the $1,020,979 in fees he had previously paid the firm.

## B.  Summary of Angulo's Posiiton on this Motion

This memorandum of law will demonstrate that federal subject matter jurisdiction exists because Bruce M. Buck, one of the two alleged partners whose overseas domicile is purported to destroy diversity, is actually a partner in Skadden's United Kingdom affiliate, rather than in Skadden-US, which is the defendant in this case.  With respect to the other, Christopher L. Baker, Skadden's repeated submission to -- and invocation of -- federal diversity jurisdiction notwithstanding the employment of Mr. Baker in the Paris office, its refusal to provide discovery concerning Mr. Baker's status, and its failure to have informed  the Court that Mr. Buck was a

partner in Skadden-UK (rather than Skadden-US), all support an inference that Mr. Baker is not a diversity destroying partner. *See* Point I, *infra*.

Point II demonstrates that Skadden is equitably estopped from contending that the malpractice claim is barred by the statute of limitations because its bills and time sheets affirmatively misrepresented to Angulo that the work relating to the dissolution of First Capital Partners (and the other entities) was being performed when, as it turns out, it was not.

Points III through V refute Skadden's contention that plaintiffs' claims in this case are precluded by either the *res judicata* or the collateral estoppel effect of the ruling by Justice Kornreich in the State Court Fees action.

Finally, Angulo has stated a claim for fraud on the Court. *See* Point VI, *infra*.

## C.  Summary of Facts Pertinent to this Motion

### (i) Skadden's Role as Angulo's Attorneys in The *Nemazee v. Angulo* Case

 Skadden's fees claim arose from its representation plaintiffs in a case entitled *Nemazee Capital Corp. v. Angulo Capital Corp. and Gerard Angulo*, 96 Civ. 1023 (RO) (the "*Nemazee v. Angulo*" or the "*Nemazee* case"). Nemazee Capital Corp. and Angulo Capital Corp. were partners in company known as *First Capital Partners*. Skadden billed for, and Angulo paid, a total $1,020,979 for the services Skadden performed through the District Court judgment in that case. The Final Judgment in *Nemazee v. Angulo* was affirmed by the Second Circuit on July 3, 1998. The affirmance

brought an end to the *Nemazee v. Angulo* litigation

### (ii) Skadden's Continued Billing After the Affirmance

The Final Judgment in the *Nemazee v. Angulo* case provided that: "the Partnership entities [*i.e.*, First Capital Advisers, Westloop Investment, Inc. and First Capital Investors, Inc., all of which were beneficially owned by First Capital Partners]" were to be dissolved "promptly."

As detailed in the complaint, after the *Nemazee v. Angulo* case, Skadden billed $170,000 for services relating to the dissolution of these entities. However, none of these entities were ever dissolved and, it appears that Skadden never took any steps to dissolve them.

Nevertheless, Skadden sent bills, and later time sheets, which purported to reflect a total of $170,000 in time charges that were incurred after the appeal and concerned the dissolution of First Capital Partners and perhaps the other entities. The entirety of Mr. Glekel's time sheets – the ostensible back up for these bills – consisted of the repetition of the following entries: "Attention to Partnership Dissolution Issues"; "Analysis of Partnership Dissolution Issues"; "Review of Partnership Dissolution Requirements"; "Attention to Miscellaneous Partnership Issues"; and "Attention to Issues: re Termination of the Partnership."

### (iii) Skadden' Fraud on the Court in the Federal Fees Action

In 2002, Skadden sued Angulo for unpaid fees in this Court in a case entitled *Skadden, Arps, Slate, Meagher & Flom, LLP v. Angulo*, Civil Case No. 02 Civ. 9322 (RMB) ("the Federal Fees Action," as defined above). This action claimed allegedly unpaid fees for both:

(i) work after the trial in the *Nemazee v. Angulo* case, including primarily, the briefing and argument of the appeal from the Final Judgment in the *Nemazee v. Angulo* case, for which it billed approximately $644,000.

- and -

(ii) the time Skadden claimed to have spent following the appeal working on the purported dissolution of First Capital Partners, for which it billed approximately $170,000.[1]

Angulo answered in the Federal Fees Action and asserted a counterclaim in which it alleged that Skadden' bills were "based on false and inflated" time records.

On January 30, 2003 an initial conference was conducted before Judge Berman in the Federal Fees Action, where Skadden sought permission to move immediately for summary judgment without any discovery first being conducted. Angulo opposed the request and contended that he should be allowed discovery prior to Skadden's filing its summary judgment motion. Complaint (Krause Statement, Ex. K), ¶¶15-17. Judge Berman ruled in Angulo's favor and held that he could conduct discovery prior to Skadden's filing its summary judgment motion. *Id.*,¶18; *see also*: February 26, 2003 letter of Stuart Krause, Esq. To Hon. Richard Berman (Krause Statement, Ex. B), at p. 1.

Judge Berman deferred the entry a discovery order so that the parties could first have three weeks to pursue settlement discussions. Krause statement, Ex. K. When the settlement discussions were unsuccessful, Judge Berman conducted a telephone conference on February 20, 2003. *Id.*

---

[1] As noted, prior to the briefing of the appeal, Angulo had already paid Skadden-US $1,020,979 for its representation of him in a lawsuit which involved only four months of discovery and nine trial days.

5

During the telephone conference, Judge Berman "ordered that discovery take place over the next 30 days." *Id.*

Skadden knew that the discovery ordered by Judge Berman would reveal that it had not done any work or generated any work product, conducted any research, or taken any actions on Angulo's behalf during the period following the Second Circuit's affirmance of the judgement in the *Nemazee v. Angulo* case, a period for which Skadden claimed $170,000 in the State Court Fees action.

Skadden therefore misled Angulo and Judge Berman and obtained a dismissal of the Federal Fees Action in order to avoid having to comply with Judge Berman's discovery order. In particular, Skadden falsely represented in Mr. Krause's February 26, 2003 letter (Krause Statement, Ex. B) that certain unidentified partners in the firm were U.S. citizens who had located abroad and could not be considered domiciled in the state where they had previously resided. If this contention were correct, then under *Herrick Company v. SCS Communications, Inc.*, 251 F.3d 315, 320-321 (2d Cir. 2001), Skadden would have no access to the federal courts in a case where subject matter jurisdiction was premised solely upon diversity of citizenship.

Based on these representations, Skadden sought and obtained an order dismissing the Federal Fees Action without prejudice. Krause Statement, Ex. D. Angulo has since learned, that Skadden continues to invoke federal diversity jurisdiction in a case in the U.S. District Court for Delaware entitled *Skadden Arps v. Learning 2000*, 02 Civ. 1582 (D. Del. 2002) ("the *Learning 2000* case"). Even after claiming in the Federal Fees Action that diversity jurisdiction was not available, Skadden

continued prosecuted the *Learning 2000* case to judgment without any disclosure to the Delaware court concerning the diversity destroying domiciles of some of its partners. The *Learning 2000* case reveals that, in actuality, the firm does not actually have any partners who destroy diversity, and that the actual motive behind the dismissal of the Federal Fees Action was to avoid the discovery ordered by Judge Berman.

**(iv) The State Court Fees Action**

After dismissing the Federal Fees Action, Skadden refiled its fees claims against in the New York State Supreme Court in Manhattan, where it was assigned to the Hon. Shirley Werner Kornreich ("the State Court Fees Action"). In the State Court Fees Action, Skadden immediately moved for summary judgment, thereby obtaining an automatic stay of discovery pursuant to CPLR § §3214, and avoided discovery altogether .

Angulo also opposed the motion on the grounds that should have an opportunity to conduct discovery in support of his defense that Skadden' invoices were based upon fictitious and inflated time charges. Krause aff., Ex. G, ¶74.

In unsuccessfully defending the State Court Fees Action, Angulo asserted in an affidavit (Krause Statement, Ex., G) that, following the affirmance of the *Nemazee* appeal, he did not authorize or request any services from Skadden concerning the dissolution of any companies (*id.*,¶. 63), or any other matters. He further contended that Skadden did not perform any services, render any advice to him, take any actions on his behalf or generate any work product whatsoever, and that

7

the time sheets for the period following the affirmance were purely fictitious. (*id.*, ¶57 *et seq.*).

### (v) Judge Kornreich's Findings in the State Fees Action Actually Support Angulo's Malpractice Claims

Despite Angulo's attempt to demonstrate that Skadden had done no work at all following the *Nemazee* appeal, Justice Kornreich awarded Skadden summary judgment in the full amount of its claimed fees. Justice Kornreich's decision implicitly finds that Angulo had authorized Skadden to dissolve these entities and that Skadden had undertaken to do so. Thus, Skadden's responsibility for obtaining the dissolution of First Capital Partners, First Capital Advisors, First Capital Investors and Westloop is now established as an "adjudicated fact." Given this adjudicated fact, Skadden's malpractice is obvious, since public records reveal it never obtained the dissolution of these entities.

## D. Argument

### Point I

### Skadden's Contention that it Is A Diversity-Destroying Party in this Case, and All Other Cases, Because its Partners Include U.S. Citizens Who Are Non-U.S. Domiciliaries Should Be Rejected

### (a) Skadden's Contentions that Buck and Baker Destroy Diversity Are Refuted By Other Cases In Which it Has Invoked Diversity Jurisdiction

Skadden contends that Bruce M. Buck's and Christopher L. Baker's membership as partners destroys diversity jurisdiction. The law is clear that, if Mssrs. Buck and Baker were, in fact, both non-U.S. domiciliaries and Skadden partners, their status would prevent Skadden from ever relying upon or submitting to federal diversity jurisdiction. Notwithstanding the employment of Mssrs.

8

Buck and Baker in overseas offices, Skadden has repeatedly submitted to federal diversity jurisdiction in other lawsuits.  In fact, Skadden is *currently* attempting to *sustain* diversity jurisdiction in the *Learning 2000* case.  *See*, *e.g.*, Skadden's memorandum of law in opposition to the writ seeking to stay enforcement proceedings in the *Learning 2000* case. (plf.'s decls., Ex. 1).

Skadden has always been perfectly familiar with the rules governing interpretation of the diversity statutes and its submission to diversity jurisdiction existed in other cases reveals that Buck and Baker, in fact, are not diversity destroying partners.  In fact, according to public records, Buck is a member of Skadden's United Kingdom affiliate, Skadden, Arps, Slate, Meagher & Flom *(UK)*, LLP ("Skadden-UK").  With respect to Baker, Skadden has refused to respond to discover demands aimed as ascertaining whether Baker is similarly a partner in an affiliated firm or not a genuine partner of Skadden-U.S., because his compensation is fixed or guaranteed rather than based on a portion of the profits.

### (i) The Law is Clear that a Partner Domiciled Outside The U.S. Destroys Diversity and Skadden has Always Known it

Skadden's contention that, prior to its disclosure to Judge Berman, it did not understand the law is preposterous. The law is clear and  well-known.  First, "a suit by or against United States citizens domiciled abroad may not be premised on diversity" since such parties are neither citizens of a state nor citizens of a foreign country within the meaning of the diversity statute.  *Smith v. Carter*, 545 F.2d 909 (5th Cir.)*, cert. denied,* 431 U.S. 955, 97 S.Ct. 2677, 53 L.Ed.2d 272 (1977).

Also, the United States Supreme Court held in *Carden v. Arkoma Associates*, 494 U.S. 185, 187

(1990)1990 that a partnership is imbued with the citizenship status of each of its partners. Thus,

in *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 69 (2d Cir. 1990), *cert. denied*, 505 U.S. 1222

(1992), the Second Circuit held that "a suit against Sullivan & Cromwell could not be premised on

diversity" because the firm included partners who were both U.S. citizens and non-U.S. domiciliaries.

### (ii) The *Herrick Co.* Case Emphatically Drove The Relevant Law Home To Skadden

In 1994 Skadden was sued in *The Herrick Company, et ano. v. Vetta Sports, Inc., et al.*, Civil

Case No. 94 Civ.0905 (RPP) (S.D.N.Y.)  Skadden admitted in the pre-trial order that diversity of

citizenship existed. *Herrick Co. v. Vetta Sports, Inc.*, 2002 WL 362760,*2 (S.D.N.Y.)  At the outset

of trial, Skadden (and all but one other defendant), settled. Judge Patterson dismissing the claims

against Skadden and retained jurisdiction over disputes relating to the settlement.  After the jury

returned $10.5 million verdict against the non-settling defendant, SCS/SWID, SCS/SWID argued, for

the first time, the Skadden's role as a defendant had destroyed diversity, because of the partners

Skadden had posted overseas, and that the judgment could not be entered. Judge Patterson rejected

SCS/SWID's jurisdictional challenge on the grounds that Skadden had already settled and because

SCS/SWID had excessively delayed in raising the jurisdictional problem. *Herrick Company v. SCS*

*Communications, Inc.*, 251 F.3d 315, 320-321 (2d Cir. 2001)

The Second Circuit reversed, and commented that regardless of the expense or effort that had

gone into a case, "subject matter jurisdiction remains 'an unwaivable *sine qua non* for the exercise of

federal judicial power.'" *Herrick Company v. SCS Communications, Inc.*, *supra*, 251 F.3d at 321 (citation omitted*)*. The Second Circuit also held that, although Skadden's admission that diversity existed was a "strong factor" supporting diversity jurisdiction, and sufficient for a *prima facie* pleading of diversity, statements in Skadden's promotional materials about certain partners' lengthy residences overseas warranted a remand for fact finding on the issues. *Id.* at 323-24.

Skadden was thus at the eye of the storm in the *Herrick* case. For example, following the verdict, Skadden obstructed the defendants' efforts to raise its jurisdictional challenge, as revealed the March 31, 1999 attorney declaration of Gregory P. Joseph (plfs.' decls., Ex. 2), that Skadden had refused to provide: "information concerning the domicile of its American partners, residing abroad, or the status of its foreign offices, because [it] still has not executed a settlement agreement with the plaintiffs" (*id.*, ¶2).

**(iii) Buck's and Baker's Status Was an Issue in *Herrick***

In *Herrick*, following the remand, Skadden submitted reponses to interrogatories "which *indicated* [*sic*] that as of February 14, 1994 (the filing dated of [the *Herrick*] action)" that Buck and Baker " were U.S. citizens domiciled abroad." June 9, 2004 Shamoon affidavit in support of Skadden's motion, ¶3. Thereafter, in Herrick, the plaintiff "conceded" that it could not establish diversity. *Herrick Co. v. Vetta Sports, Inc.*, 2002 WL 362760, *5[2]

---

[2]Ultimately, the Herrick judgment was largely upheld, because Skadden was held to be a dispensable party whose presence as a defendant at the outset of the trial did not prejudice the jury against SCS/SWID. *The Herrick Co. v. Vetta Sports*, Inc., 2002 WL 362760, *5 (S.D.N.Y.), *aff'd in part and mod. in part sub nom. SCS Communications v. Herrick Co.*, 360 F.3d 329, 346

Thus, in *Herrick*, Skadden never firmly denied that diversity jurisdiction was destroyed by the status of Buck and Baker. Instead, according to the Shamoon affidavit, its interrogatories merely "*indicated*" this to be the case "*as of February 14, 1994.*" The actual interrogatory responses Skadden submitted in Herrick are not attached to Skadden's motion, are not in the Court file in *Herrick* and Shamoon's carefully-worded and heavily-qualified affidavit should not be credited at a time when Skadden has refused to provide the actual responses themselves, despite Angulo's having requested them in a document demand. Plfs.' decls., Ex. 3, item 14; July 7, 2002 letter from Stuart Krause, Esq. (*id.*, Ex. 4 ).

### (iv) Skadden's Knowledge of the Relevant Law is Confirmed by The *Jordan (Bermuda) Investment Co.* Case.

In *Jordan (Bermuda) Investment Co. v. Hunter Green Investments*, LLC, 205 F. Supp.2d 243, 254-256 (S.D.N.Y. 2002), the defendants defeated an assertion of federal diversity jurisdiction by relying on the *Cresswell* and *Herrick* decisions. Defendants were represented by Skadden in this case, which further confirms Skadden's familiarity with the relevant law.

### (v) Skadden's Assertion of Diversity Jurisdiction In the *Learning 2000* Case

On October 25, 2002, Skadden filed the *Skadden Arps v. Learning 2000* action in the U.S. District Court in Delaware. In the *Learning 2000* complaint, Skadden asserted that federal diversity jurisdiction existed and, thereafter, prosecuted the case to judgment. Plfs.'s decls., Ex. 1, pp. 1-9.

---

(2d Cir. 2004)

Thus, in *Learning 2000*, Skadden asserted that federal diversity jurisdiction existed even though it was aware of the *Cresswell* decision, had been involved as a party and witness in Herrick, and involved as counsel in the *Jordan (Bermuda)*. The only way Skadden could make a good faith assertion of jurisdiction in the *Learning 2000* case was if, in fact, Buck and Baker were not diversity-destroying partners. Notably, even though the *Learning 2000* case was commenced at the same time as Skadden's Federal Fees Action against Angulo, Skadden never argued in the *Learning 2000* case that diversity did not exist, even after, in its dispute with Angulo, it finally "remembered" the *Herrick* case, and used it to get out from under Judge Berman's discovery order, as discussed above.

During the *Learning 2000* case, subject matter jurisdiction "became an issue" and (plfs.' decls., Ex. 1, p. 6) Skadden again asserted that it did (*id.*, pp. 8-9).

After the judgment was entered in Skadden's favor, *Learning 2000* learned about the *Herrick* decision and Skadden's claim in its dispute with Angulo that diversity did not exist, and moved to quash writs of execution which Skadden had issued out of a U.S. District Court in Tennessee. In responding to this motion, Skadden reiterated in a *May 10, 2004* memorandum of law, (plfs.' decls., Ex. 1), that diversity jurisdiction existed. Learning 2000's motion is *sub judice,* according to PACER http://pacer.tnmd.uscourts.gov/dc/cgi-bin/pacer250.pl?puid=01089465241.    Skadden is thus simultaneously taking directly contrary positions in this case and in the *Learning 2000* case on the fundamental question of whether it can ever be subject to the federal courts where subject matter jurisdiction is premised solely on diversity.

### (vi) Skadden's Six Pleadings Admitting Diversity

Between 1994 and May 2004, Skadden pleaded on six separate occasions that federal diversity jurisdiction was appropriate, specifically: in (1-2) its answer and the pre-trial order in the *Herrick* lawsuit; (3) its complaint in the Federal Fees action against Angulo; and (4-6) its complaint and in connection with two separate motion in *Learning 2000*.

## (b) Skadden is Judicially Estopped From Disputing Diversity

Though judicial estoppel has only a limited relevance in determining subject matter jurisdiction (*Wright v. Bankamerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000)), it should apply here. Throughout the entire duration of its dispute with Angulo, Skadden has *simultaneously* contended in the *Learning 2000* case that it can sue in federal court based solely on a claim of diversity of citizenship and has obtained a judgment in *Learning 2000* based on a claim of diversity of citizenship. Skadden's attempt to have it both ways should not be countenanced. *Selected Risks Insurance Co. v. Kobelinski*, 421 F. Supp. 431, 435 (E.D. Pa. 1976) (by procuring a dismissal of the first action by contending that the court lacked subject matter jurisdiction, the plaintiff became judicially estopped from removing the case back to federal court).

Also, under federal case law, judicial estoppel does not require that the party seeking the estoppel have been a party in the prior action. *Maharaj v. Bankamerica*, 128 F.3d 94, 98 (2d Cir. 1997).

Skadden will contend that the law of the Third Circuit is different, and that *Cresswell* and the

14

*Herrick Company* would not be followed in the Third Circuit. This is nonsense since the United States has already held that, where a "United States citizen has no domicile in any State * * * [he] is therefore 'stateless for purposes of [the diversity statute]." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).

**(c) Buck is A Member of Skadden-UK Rather than Skadden-US**

Buck is not a diversity destroying partner in Skadden-US. Skadden-US is a Delaware limited liability partnership. *See* the original "Statement of Qualification" filed in Delaware on May 25, 2001 (plfs.' decls., Ex. 5) and the 2004 Annual Report filed on May 28, 2004 (*id.*, Ex. 6).

Buck appears to be a partner in Skadden-*UK,* rather than Skadden-US.  *See*, *e.g.*, the Certificate of Conversion filed on December 19, 2003 for Skadden-UK (*id.*, Ex. 7) and the annual report filed for on May 28, 2004 (*id.*, Ex. 8).  In fact, the Certificate of Conversion was signed by Buck himself (*id.*, Ex. 7, p. 2), thereby specifically confirming that he is a limited liability partner of Skadden Arps-U.K.

Skadden's own website (excerpted at Ex. 9) confirms that its London office is operated by Skadden-UK, which it describes as an affiliate (*id.*, at p.2).  Buck's status as partner in an *affiliate* of Skadden-US does not destroy diversity jurisdiction in a case where Skadden-US is a party.

**(d)    Voluminous Circumstantial Evidence Indicates
    That Baker is Not a Diversity Destroying Partner**

Skadden Arps' website refers to the firm as "Skadden, Arps, Slate, Meagher & Flom  and Affiliates." Plfs.' decls., Ex. 9, p. 1.   In addition to Skadden-UK, Skadden has another affiliate

known as "Skadden, Arps, Slate, Meagher & Flom (International), LLP." (hereinafter, "Skadden-

International"). Skadden-International operates the firm's Australian office (plfs.' decls., Ex. 10, p.

1) and its Singapore office (*id.*, p. 2) and previously its Tokyo office (*id.*, Ex. 9, p. 5). While

Skadden's website makes no reference to Skadden-International operating the Paris office, nothing

can be inferred from that circumstance because the website similarly does not refer to Skadden-

International operating the Singapore or Australian offices either (*id.*, Ex. 9, pp. 3-4), even though

it clearly does so (*id.*, Ex. 10).   Skadden's persistent reliance on federal diversity jurisdiction despite

the employment of Baker in the country's foreign office, raises an inference that Baker is not a

partner in Skadden-US.  That inference is strengthened by the fact that Skadden has, apparently,

incorrectly asserted in this case that *Buck* is a partner in Skadden-US when, in truth, he is a partner

in Skadden-*UK* instead.  The inference becomes stronger still in light of Skadden's refusal to respond

to Angulo's document demands on this issue, as discussed below in Point I-E.  Also supporting the

inference is the fact that Baker, and, for the matter, Buck as well, discuss their partnership at

Skadden Arps in the *past tense*, since each states in his affidavit that:  "During those years when I

*was* a Skadden partner, . . .  (emphasis added)."  Baker aff., ¶ 3; Buck aff., ¶3.[3]

---

[3]If, in fact, Baker has dual French and U.S. citizenship, Skadden might have been prepared
to defend the assertion of diversity in *Learning 2000* on an alienage theory under 28 U.S.C.
§1332(a)(2).  Upholding diversity jurisdiction in *Learning 2000* on an alienage theory  would
arguably be inconsistent with *Sadat v. Mertes*, 615 F.2d 1176, 1186 (7th Cir. 1980), which holds
that for dual citizens, only the U.S. citizenship is relevant under §1332(a)(2).  Nevertheless, even
in *Sadat*, the Seventh Circuit recognized that deeming dual citizens who lack a U.S. domiciles to
be "citizens or subjects of a foreign state" was supported by the "literal language" of 28 U.S.C.
§1332(a)(2). 615 F.2d at 1185 (at the discussion of *Aguirre v. Nagel*, 270 F. Supp. 535 (E.D.

Another possibility is that Baker's compensation is at least partially fixed or guaranteed, rather than based exclusively on a portion of Skadden's profits. In that case, he would not be a partner in Skadden, and his domicile would not destroy diversity under *Carden v. Arkoma. E.g.*, *Equal Economic Opportunity Commission v. Sidley Austin Brown & Wood*, 315 F.3d 696, 709-710 (7th Cir. 2002) (Easterbrook, J, concurring in part and dissenting in part) (discussed below in Point I-E); *Davis v. Loftus*, 2002 WL 31031467 (Ill. App. 1st Dist.) ("a partner who shares in the profits or loss is personally liable for the law firm's debts, while an 'income partner' who receives a salary plus a bonus is an employee.")

**(e)  Skadden's Bizarre Refusal to Respond to Plaintiffs' Discovery
        Demands Concerning Status of Baker and Buck**

In response to Skadden's assertion that Buck and Baker are diversity destroying partners Angulo served upon Skadden both a Document Demand (plfs.' decls., Ex. 3 ) and Requests for Admissions (*id.*, Ex. 11) aimed at ascertaining whether Buck and Baker were actual partners in Skadden-US, as opposed to partners in a Skadden affiliate or salaried or partially salaried attorneys.

---

Mich. 1967)). The *Sadat* decision also recognized that "permitting [dual citizens domiciled abroad to bring] suit under alienage jurisdiction would not run counter to the complete diversity considerations" (*id.*, at 1186) since such citizens are "stateless." Furthermore, *Sadat* was decided, at least in part, based upon a theory of "dominant nationality" and diversity was found lacking since the putatively alien party lived and worked in the United States, so that his American citizenship, rather than his Egyptian citizenship, was predominant. *Id.* at 1188. If, by contrast, Baker has become a dual U.S. and French citizen, his French citizenship would predominate, in light of where he lives and works and his declination to vote in the U.S. Accordingly, an assertion of diversity based on an alienage theory would be colorable and reasonable claim if, in fact, Baker does have dual French and U.S. citizenship.

Skadden has refused to respond in any fashion to these discovery requests. Plfs.' decls., Ex. 4.

Plaintiffs are indisputably entitled to this information, and the courts routinely grant discovery on issues raised in diversity challenges. For example, after the remand in the *Herrick* case, Skadden was required by Judge Patterson to respond to interrogatories concerning the status of Buck and Baker. *See generally: Reed Elsevier, Inc. v. The Credit Index,* 2001 WL 1478683, *1-2 (S.D.Ohio) (ordering discovery on the issue of whether diversity jurisdiction exists). Also, Skadden cannot seriously contend that its partnership agreement is not relevant to determining whether Buck and Baker are true partners. *Peters v. Milton Hall Surgical Associates, LLC*, 2003 WL 21730606, *2 (E.D.La.) (analyzing an LLC's operating agreement to determine whether allegedly diversity destroying individual was still a member).

The Court should not permit Skadden to assert that Buck and Baker are diversity destroying partners, and simultaneously withhold discovery concerning whether they are actually compensated according to profits or, instead, at least partly salaried. In *Equal Economic Opportunity Commission v. Sidley Austin Brown & Wood*, 315 F.3d 696 (7th Cir. 2002), an employment case, Judge Easterbrook's concurring opinion stated the obvious point that, under *Carden v. Arkoma,* a claim that diversity was destroyed by a partners' citizenship, required proof that he was not a partner in name only:

> If this had been a suit under the diversity jurisdiction, and we needed to decide whose citizenship counted for purposes of the rule that a partnership has every partner's citizenship, see *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), we would have acknowledged that all 32 were partners by normal reckoning. We

18

know that all 32 (i) received a percentage of Sidley's profits and had to pony up if Sidley incurred a loss; (ii) had capital accounts that were at risk if the firm foundered; and (iii) were personally liable for the firm's debts and thus put their entire wealth, not just their capital accounts, on the line. We also know that (iv) no non-partner has an equity interest in the firm.

315 F.3d 709-710. *Cf. E.R. Squibb & Sons v. Accident & Casualty Ins.*, 160 F.3d 925, 940-941 (2d Cir. 1998) (Jacobs, J., concurring) (in assessing a claim of diversity under *Carden v. Arkoma*, it was necessary to determine whether the participants in the syndicate shared it profits, expenses and risks).

Skadden's failure to reveal in its motion that Buck was a partner in Skadden-UK, a separate legal entity, rather than Skadden-US, confirms that it would be unfair to credit any of its assertions concerning Buck and Baker at face value. Skadden's refusal to supply the clearly relevant discovery on these issues strongly suggests that the information it is withholding is adverse to its position.

## Point II

### The Legal Malpractice Claims Are Timely

Skadden contends in Point C of its memorandum of law that Angulo's malpractice claims are barred by the statute of limitations. This is incorrect.

Angulo's malpractice claims are based on contentions: (1) that Skadden undertook to discontinue or dissolve First Capital Partners, First Capital Advisors, Westloop and First Capital Investors and (2) that it negligently failed to obtain the dissolution of these entities. The first contention – that Skadden undertook to perform services relating to the dissolution – cannot be

disputed by Skadden because, in the State Court fees action, Skadden was awarded a judgment

permitting it to recover fees for these services.

Of course, the statute of limitations for professional malpractice claims is equitably tolled

The second contention – that Skadden failed to dissolve these entities – is established by

public records, which reveal that these entities were never discontinued or intentionally dissolved.

Complaint (Krause Statement, Ex. K, ¶¶34-37).

Of course, the statute of limitations for professional malpractice claims is equitably tolled

where the defendant has concealed his misconduct. *E.g.*, *Simcuski v. Saeli*, 44 N.Y.2d 442, 448-449,

406 N.Y.S.2d 259, 262 (1978) ("It is the rule that a defendant may be estopped to plead the Statute

of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from

filing a timely action.")[4]

As set forth in ¶¶7-11 of the accompanying Angulo declaration, for 15 months Skadden

submitted bills and time sheets which specifically represented that its sole activity on Angulo's

behalf related to the dissolution of these entities, and little if anything else. The bills are annexed as

Exhibit 12 and the sheets are annexed as Ex. 13 to plaintiffs' accompanying declarations.

---

[4] *See also*: *Mukasa v. Balick & Balick*, 2002 WL 1971921,*2(D. Del.) ("fraud or concealment of the attorney's wrongdoing may toll the statute"); *Owen v. MacKinnon*, 6 A.D.2d 684, 775 N.Y.S.2d 565, 566-567 (2d Dept. 2004) ("[W]here a physician fraudulently conceals his or her malpractice, and the patient's reliance upon th physician's representations and advice prevents discovery of the malpractice, the doctrine of equitable estoppel may be involved to preclude the physician from asserting the statute of limtations as an affirmative defense[].") *See generally*: *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) ("The essence of the equitable tolling doctrine 'is that a statue of limitations does not run against a plaintiff who is unaware of his cause of action.' [Citation omitted.].")

As it turned out, despite all this time – for which the fees charged were $170,000 – nothing was accomplished in regard to discontinuing or dissolving any of these entities.  Complaint (Krause Statement, Ex. K, ¶¶34, 37.

Accordingly, the running of any statute of limitations period had been tolled.  *Cf.*, *Piracci Construction Co. v. Skidmore, Owings & Merrill*, 490 F. Supp. 314, 320 (S.D.N.Y. 1980) ("To apply the general rule that a claim for malpractice accrues upon the occasion of the negligence may serve to encourage the architect to conceal his errors for a sufficient time so as to allow the statute of limitations to expire.")[5]

### Point III

### The Fraud on the Court Claim is Not Barred By *Res Judicata or* Collateral Estoppel

Skadden contends in Point B of its memorandum of law that plaintiffs' fraud on the court claim is barred on the grounds of *res judicata* and collateral estoppel.  These arguments are frivolous.

New York takes a "transactional" approach to *res judicata*. *Smith v. Russell Sage College*, 54 N.Y.2d 185, 193, 445 N.Y.S.2d 68, 76 (1981).  The transactions involved in the Angulo Fees Dispute involve Skadden's representation of Angulo during the years 1996 through 1999.  The fraud

---

[5] *Neel v. Magana, Olney, Levy, Cathcart and Gelfand*, 6 Cal.3d 176, 187-188, 491 P.2d 421, 428 (1971) (tolling the limitations period in attorney malpractice cases is justified because of "the special nature of the relationship between a professional person and client"); *Matter of Mulrow*, 226 A.D.22d 61, 62, 650 N.Y.S.2d 668, 669 (1ˢᵗ Dept. 1996) (upholding disciplinary action against a lawyer where he engaged in conduct concealing his malpractice in failing to file a lawsuit).

claims in this case are based on Skadden's committing a fraud on the Court *in 2003* by representing that it was not entitled to invoke diversity jurisdiction. These are entirely distinct transactions and *res judicata* is irrelevant to the fraud on the Court claim.

Skadden suggests that the fraud on the court claim was raised and litigated defensively by Angulo in the State Court Fees litigation. This is also nonsense. Angulo's attorney was merely alluding to the voluntary dismissal before Judge Berman after Judge Berman had granted Angulo's request for discovery, as part of an argument that Angulo should similarly be allowed discovery in the State Fees action. Krause Statement, Ex. I, ¶¶2-3. This statement cannot possibly be construed as substantive claim, as opposed to an argument in favor of discovery. Points IV and V, *infra*, demonstrate that, as a matter, of law, Justice Kornreich's discretionary denial of Angulo's request for discovery is not entitled to any preclusive effect.

In the State Court Fees action, there was neither any express nor any necessary finding which would be inconsistent with the Angulo's fraud on the Court claim. *Wunderlich v. Hampton Design & Construction Group, Inc.*, 5 A.D.2d 158, 160, 773 N.Y.S.2d 54 (1st Dept. 2004).

**Point IV**

**The Legal Malpractice Claims Are Not Barred by
Collateral Estoppel or *Res Judicata***

**(a) There is No Basis for Issue Preclusion**

Skadden seems to suggest that Angulo's legal malpractice claim is collaterally estopped because it was implicitly tried by Justice Kornreich. This argument is refuted by a decision squarely

22

on point. In *Sherman v. Ansell*, 207 A.D.2d 537, 538, 616 N.Y.S.2d 90, 91 (2d Dept 1994) the Appellate Division held that, where the client could not have discovered the malpractice in time to have it litigated as a counterclaim in a fee action, "there [was] no merit to the . . . claim that the plaintiff was barred by *res judicata* or collateral estoppel from suing to recover damages for legal malpractice because she failed to counterclaim for such relief in an earlier action . . . for unpaid attorneys' fees."

Because Skadden's bills and time sheets continued to refer to activities pertaining to the dissolution of First Capital Partners, and the other entities, Angulo had no way of knowing that these entities had not been dissolved. Accordingly, when Angulo served his answer (Krause aff., Ex. F) in the State Court Fees litigation, he included only cause of action based only on fraudulently inflated billing records, and did not allege that Skadden had committed malpractice by failing to have these entities dissolved.

Angulo did not discover the malpractice until June 20, 2003, when he was opposing Skadden Arps' summary judgment in the State Court Fees Action and a paralegal his attorney had sent to the New York County Clerk's office found that a Certificate of Discontinuance had never been filed, and that the Clerk considered First Capital Partners a "live entity." Angulo decl., ¶12; *see also*: the June 25, 2003 affidavit of Lydia Castillo (plfs.' decls., Ex. 14).

Even if Justice Kornreich's decision could be considered an implicit determination that Skadden had not committed malpractice, that result would not be not be accorded preclusive effect.

The results of a prior proceeding can collaterally estoppel further litigation only if it provided a "full and fair opportunity" for the matter to be heard. *Wunderlich v. Hampton Design & Construction Group, Inc.*, 5 A.D.2d 158, 160, 773 N.Y.S.2d 54 (1st Dept. 2004). When, on June 20, 2004, Angulo discovered that Skadden had failed to discontinue First Capital Partners as a New York partnership, it was too late, as a practical matter, for him to have raised that malpractice as a counterclaim in the context of the fees application. At that point, discovery had been stayed by Skadden's summary judgment motion (CPLR §3214), and Angulo could not have amended his counterclaim as of right. Angulo thus had no right to plead a malpractice counterclaim or even conduct discovery. Instead, whether Angulo could amend to include a counterclaim for legal malpractice or obtain discovery at that stage were solely within Justice Kornreich's discretion. CPLR § 3025(b) (governing discretionary leave to amend); *Neryave v. Solon*, 6 A.D.3d 510, 775 N.Y.S.2d 348, 349 (2d Dept. 2004) (determination as to whether a summary judgment motion should be held "continued" in order to permit a party to obtain discovery it desires to use in order to oppose the motion is within the court's discretion).

In fact, Angulo did request the relevant discovery from Justice Kornreich (Krause Statement, Ex. G, ¶74(iii)), who implicitly rejected the request, as was within her discretion. Such discretionary determinations by a court are not entitled to preclusive effect. *AT&T v. Salesian*, 77 A.D.2d 706, 430 N.Y.S. 2d 408 (3d Dept. 1980) (discretionary denial of motion for leave to amend is not a basis for claim preclusion).

The situation is precisely the same as that in *Sherman v. Ansell, supra,* where, when the malpractice was discovered, as a practical matter, it was too late to "have it litigated" in the fees case. Furthermore, Justice Kornreich's findings in the State Court Fees litigation actually support Angulo's malpractice claim. In the State Court Fees action, Angulo was taking a position which was inconsistent with any malpractice claim. Specifically, Angulo expressly denied in the State Court Fees litigation that he ever asked Skadden to dissolve or discontinue First Capital Partners or the other entities. Instead, Angulo was alleging the opposite: that he told Skadden *not* to engage in this activity. June 25, 2003 Angulo aff. (Krause Statement, Ex. G), at ¶63. Since Angulo was not claiming that he had asked Skadden to dissolve or discontinue these entities, he could hardly have been complaining in the Fees Action that Skadden had committed malpractice by failing to do so.

However, by awarding Skadden the full amount of its fee request, Justice Kornreich implicitly found that Skadden had been authorized to do the dissolution work and had undertaken to do it. While Angulo disagrees with these implicit findings by Justice Kornreich, they are now "adjudicated facts," are entitled to preclusive effect and Skadden is judicially estopped from disputing them. Since public records reveal that Skadden did not accomplish the dissolution of these entities (Krause Statement, Ex. K, ¶¶34, 37) it is clear that the malpractice claim is meritorious.

**(b) *Res Judicata* is Not Applicable**

Skadden contends that Angulo had an opportunity to raise the legal malpractice claims before Justice Kornreich, that he failed to do so and that his malpractice claims are therefore barred as a

matter of *res judicata*. This argument is incorrect in light of Skadden's persistent false representation in its time sheets that the dissolving of these entities was underway: "'A defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff fails to include in any earlier action because of the defendant's own fraud.'" *Smith v. Russell Sage College*, 54 N.Y.2d 185, 193, 445 N.Y.S.2d 68, 72 (1981)[citing *Restatement, Judgments (2d)* [Tent Draft No. 5], §§ 61.2, Comment j].

    As noted, when Angulo first learned that First Capital Partners had not been dissolved as an entity in New York, he no longer had any right to amend his counterclaim and discovery was stayed by Skadden's summary judgment motion. Angulo, at that point requested that the Court deny the summary judgment motion in order to allow him to conduct discovery on this issue. Krause Statement, Ex. G, ¶74(iii).

    Because Justice Kornreich denied Angulo's request that the summary judgment motion be continued under CPLR §3212(f) to obtain this discovery, as she had discretion to do (*Neryave v. Solon, supra*), Angulo was unable to explore and raise the legal malpractice claims, at any time after he had learned that Skadden had failed to discontinue First Capital Partners.   Angulo therefore did not have an opportunity to raise the legal malpractice as a counterclaim in the fees case.  Under *Sherman v. Ansell* (discussed, *supra*, at pp. 20) – which is both a collateral estoppel and a *res judicata* decision – the malpractice claim is not precluded by the judgement in the State Court Fees case.

Also, Angulo was not required to seek leave to amend his counterclaim in the State Court Action to add a legal malpractice claim, because *res judicata* does not attach to purely discretionary decision by a court. *AT&T v. Salesian*, *supra*.

### Point V

### Plaintiffs Have Stated a Claim for Fraud on the Court

The elements of a "fraud on the court" claim are: (1) conduct on the part of an officer of the court; (2) conduct directed to the judicial machinery; (3) conduct that is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; (4) a positive averment or a concealment when one is under a duty to disclose; and (5) deception of the Court. *Workman v. Bell*, 227 F.3d 331, 336 (6th Cir. 2000). Each of these elements is present here. Both Skadden and its attorneys in the Federal Fees Action are officers of the Court. The representations were aimed at Judge Berman. The representation was at least recklessly neglectful of the truth – which was that Skadden was entitled to invoke the Court's diversity jurisdiction as reflected in the *Learning 2000* case. Finally, an obligation to disclose only accurate information to the Court obviously existed.

Contrary to defendants' arguments, reliance is not an element of an "fraud on the court claim" and, in fact, this point has been enunciated by the United States Supreme Court. *Hazel Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). *Accord*: *Dixon v. Commissioner*, 316 F.3d 1041, 1046 (9th Cir. 2003) ("Prejudice is not an element of a fraud on the court claim [citing, *inter alia*, *Hazel-Atlas*, *supra*]. * * * Furthermore, the perpetrator of the fraud

should not be allowed to dispute the effectiveness of the fraud after the fact. [citing, *inter alia*, *Hazel Atlas*].") The case defendants rely upon – *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1988) – involved false statements which a party made in discovery. The claims were rejected because these allegations could be contested at trial, because they did not involve the integrity of the court system and were not perpetrated by officers of the Court.

Here, Skadden consist officers of the Court, who should be held to higher standards than a non-attorney litigants. Angulo was therefore justified in relying on Skadden's statements. There were no storm warnings that Skadden was misleading Judge Berman on this point, since the *Herrick* decision seemed to indicates that the firm did include diversity destroying partners. Furthermore, since Skadden's letter to Judge Berman (Krause aff., Ex. B) did not identify either Mr. Buck or Mr. Baker as the alleged diversity destroying partners, plaintiffs had no method of expeditiously investigating Skadden's contention. Also, Skadden's fraud did impact on the integrity of the courts because all the time in which Skadden has been attempting to avoid federal jurisdiction in its dispute with Angulo, it has been attempting to preserve it in the *Learning 2000* case.

Finally, the fact that Angulo's attorney was, like Judge Berman, misled into stipulating the dismissal does cannot undermine the claim of fraud. Cf. *BAC Local Union 15 Pension Fund*, *v. Cromwell*, 2002 WL 31761565, *3 (W.D. Mo.) (claim that a party "[would] not have entered into a stipulation" if he "had known the representations were false, is the classic definition of fraud in the inducement.")

**E. Conclusion**

For the foregoing reasons, and for the reasons set forth in the accompanying Berry and

Angulo declarations, Skadden motion should be denied in its entirety.

Dated:  New York, New York                    Eric W. Berry Law Office PC
        July 9, 2004

                                           By:  _____*Eric Berry/s*_____
                                              Eric W. Berry [EB8598]
                                      *Attorneys for plaintiffs Gerard Angulo*
                                        *and Angulo Capital Corp.*
                                      509 Madison Avenue, Suite 2004
                                      New York, New York    10022
                                      (212) 355-0777

29